The opinion of the court was delivered by
McEnery, J.
The plaintiffs took out policies of insurance in the defendant companies on a building in the city of New Orleans which they jointly insured. A fire partially destroyed the building. Each *1177 policy contained a stipulation that it should be optional with the company to repair, rebuild or replace the property on giving notice within thirty days after receipt of-proof of loss. The insurance companies elected to repair and replace the property. After commencing work they abandoned the same for the reason that a part of the building collapsed and fell, impairing the repairs which had been made, and doing other damage to the building; that afterward a storm blew down a portion of the rear wall, and the party wall was afterward condemned by the city authorities. There is a dispute as to whether the collapse occurred through the fault of the contractor employed by defendants, or whether it was caused by inherent defects in the original construction of the building. The defendants endeavor to escape liability on the ground of the inherent defects in the original construction of the building, and if, as contended by plaintiff, the collapse was through the fault of the contractor, they ask for judgment against him in the amount rendered for plaintiffs. He was cited as warrantor.
When the defendants abandoned the work, the plaintiff undertook the repairs. There was judgment in their favor for the amount thus expended, and their demand in the call in warranty was rejected.
The defendants filed an exception, alleging a misjoinder of parties plaintiffs and defendants, because there were separate contracts with each company, and that each insurance company was not a, party to the contract made by the other, as each part owner of the property insured his interest in a separate company. Each contract stipulated to pay the loss, or to repair, rebuild or replace. They all elected to repair. Each could not repair one undivided part of the building. But if there was any force in the exception, it was avoided by the companies undertaking to repair, and employing, through an agent, one of the defendants, to repair for all.
The election to repair converted the contract of insurance into one of repairing, regardless of the amount of the insurance named in the policy, which ceased to be a rule, for damages. Fire Assurance vs. Rosenthal, 108 Pa. 476; Morrell vs. Irving Fire Insurance Co., 33 N. Y. 429.
This principle has become so fixed by repeated adjudications that it has passed into the text-books as elementary. 2 May Insurance, Sec. 433; 7 Am. and Eng. Ency. of Law, p. 1053; 1 Wood Fire Ins, p. 333.
*1178 The defendants were in the position when they elected to repair as though they were contractors who had examined the building and made an estimate of the expense. No original defects in the building could possibly excuse them from doing just what they had agreed to do. It was to repair the building as it originally stood, and if there were defects in timber, weak walls, etc., it was their duty to have considered these matters before making the election. They can not be urged as defences for non-execution. of the contract. If the obligations of defendants thus arise from an ordinary contract to build or repair, it would seem that it is even the more imperative when the contract has been substituted for the contract to indemnify the loss in money, as the contract of insurance is to fully indemnify the insured and to place him in as favorable a position as he was before the loss. This has been affirmed in many cases, and it has been often held that where a wooden structure is insured and partially destroyed, and a city ordinance forbids repairing and requires a brick building in place of the wooden one, the loss will be treated as a total destruction of the building. 2 May Ins., Sec. 433; Brady vs. N. W. Ins. Co., 11 Mich. 425; Ins. Co. vs. Garlington, 18 S. W. 337; Monteleone vs. Ins. Co., 47 An. 1568.
In 1 Wood on Fire Insurance, pp. 331, 332, it is stated, in speaking of the election to indemnify in money, or to rebuild or repair, “which of these it will do it is optional with the insurer to choose-, and when he has made his selection the contract becomes one to pay money, if he so elects, or to reinstate the property if he elects to do that without any reference to the expense of doing so.” And on page 333 the same authority says: “When the insurer elects to reinstate the property and gives notice thereof to the assured, it is held that he is not excused from doing so, because performance has become impossible. Nor will he be excused from paying the entire amount of the loss. An election to rebuild operates as a waiver of all defences, except fraud or mistake.”
The testimony in the record shows that Walther, the contractor, used all necessary precautions to protect the building from falling when taking down the walls. The collapse evidently was caused by inherent defects in the building aggravated by the fire. It was originally improperly constructed, as the walls were not properly anchored, but it would have probably answered all purposes had it not been for the Are.
*1179 The testimony of the city officials, whose duty it was to critically ■examine the building, and who observed the precautions to prevent the walls' from falling by Walther, we think is conclusive that he was not to be blamed. At any rate the evidence is so conflicting on some points where it is attempted by plaintiffs to prove that the contractor was at fault that no judgment could be rendered on the call in warranty against the contractor.
Judgment affirmed.