Mechanics Trust Co. *v.* Fidelity & Casualty Co., Appellant.

Argued March 26, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Robert P. F. Maxwell,* with him *George F. Blewett, William F. Bailey* and *Metzger & Wickersham,* for appellant.—The measure of damages is based on the difference of the value of the property as security: Province Security Corp. v. Casualty Co., 168 N. E. 252; Longfellow v. McGregor, 63 N. W. 1032; Weightman v. Trust Co., 208 Pa. 449; Penna. Co. v. Central Trust Co., 255 Pa. 322; Wheeler v. Equitable Trust Co., 206 Pa. 428; Equitable Trust Co. v. National Surety Co., 214 Pa. 159.

*Paul G. Smith,* for appellee.—The appellee at all times has contended that the purpose of the bond was to give

to it the security of four completed dwellings on the real estate and that the measure of damages on the breach was the reasonable cost of completion so that appellee obtained such security.

The contract was a completion bond: Reigart v. White, 52 Pa. 438; Equitable Trust Co. v. Nat. Surety Co., 214 Pa. 159; Union Trust Co. v. Citizens Trust Co., 185 Pa. 217; James v. Scott et al., 59 Pa. 178.

The proper measure of damages was the reasonable cost of completion: Weightman v. Union Trust Co., 208 Pa. 449; Wheeler v. Equitable Trust Co., 206 Pa. 428; German-American Title & Trust Co. v. Trust and Surety Co., 190 Pa. 247; Penna. Co. v. Trust & Savings Co., 255 Pa. 322; Central Trust & Savings Co. v. Furniture Co., 65 Pa. Superior Ct. 339; Wheeler v. Trust Co., 206 Pa. 428.

The apparent profit on the sale of the dwellings does not inure to the benefit of the surety: Wheeler v. Trust Co., 206 Pa. 428; Edgar v. Boies, 11 S. & R. 445.

OPINION BY MR. CHIEF JUSTICE FRAZER, June 27, 1931:

This action in assumpsit is by the obligee on a personal surety bond against the surety after breach by the principal. In February, 1928, William H. Turby planned to erect two double houses on a tract of land owned by him at 19th and Spencer Streets in the City of Harrisburg. At that time, the land in question was encumbered by a mortgage of $3,355.59 and a judgment lien amounting to $1,500. To finance his improvement, Turby applied to plaintiff trust company for a loan of $15,000, to be secured by a first mortgage on the tract of land and buildings to be erected. The court found that $5,000 of the loan was advanced upon credit of the ground or unimproved land and to clear off the above mentioned earlier liens so that plaintiff's $15,000 mortgage would be a first lien; the remaining $10,000 of the loan to be advanced to Turby for construction of the proposed buildings. The bond and mortgage on the

premises, to cover the $15,000 loan, were duly executed by Turby in favor of the Mechanics Trust Company under date of February 7, 1928. However, since the mortgage, to the extent of $10,000 of the loan, was on the proposed buildings, not yet constructed, plaintiff further required that Turby furnish a personal bond in the amount of $10,000 guaranteeing completion of the proposed two double houses. Turby met this requirement, and it is this personal surety bond which forms the subject-matter of the present suit.

The surety bond was executed in favor of plaintiff trust company on February 21, 1928, signed by Turby as principal and the Fidelity & Casualty Company of New York, the present defendant, as surety. Following the usual bonding paragraph, the bond provided, "Whereas, the said William H. Turby has agreed to erect 2 two story double dwellings at 19th and Spencer Streets, Harrisburg, Pennsylvania, in view of which the Mechanics Trust Company has loaned to him the sum of $10,000 for the construction of the said dwellings. Now, therefore, the condition of the foregoing obligation is such that if the said William H. Turby shall well and faithfully perform his part of the agreement and erect said dwellings, then this obligation shall be void, otherwise to be and remain in full force and effect."

Although the bank appears to have made Turby a minor advance on February 20, 1928, it was not until the above quoted bond was in plaintiff's possession that, on February 23, 1928, the bank advanced Turby the money to pay off the old mortgage and the judgment lien standing against the land. At this time he was given a check for $300 with which he paid the premium on the surety bond procured from defendant and also a personal check for $200. The balance of $9,000 of the loan was paid to Turby in installments of $500 and $1,000 each on eighteen separate dates from March 8, 1928, to May 24 of the same year.

Turby proceeded with the erection of the houses until they were from one-third to one-half completed. In September, 1928, plaintiff, learning that Turby had discontinued work on the buildings, immediately advised defendant surety company in writing of this fact and requested that immediate attention be given the matter. The court found that, following this notification, defendant did nothing. Turby became bankrupt on October 12, 1928, and the land and four uncompleted houses which were in course of erection thereon were sold for the sum of $7,800 at public sale by the trusee in bankruptcy, free and clear of all encumbrances, to David Wallace, who acted for plaintiff bank.

The condition of the houses when Wallace took possession was the same as when Turby ceased work. Wallace had the buildings completed at a cost of $9,851.34, following, aside from one minor change, Turby's original plans. Wallace sold the houses on installment contracts for a total price of $22,400. The evidence showed the price received, after payment of all expenses, and assuming that the installment contracts will be carried out, represented a net profit, due to Wallace's operation, of $3,350.58. Of this sum, $1,675.29 is to go to plaintiff under an oral agreement testified to by Wallace, which testimony was admitted by the trial court with the understanding that the jury were to be told to disregard it. The evidence further developed that the principal and interest due on the $15,000 mortgage to August 7, 1929, was $16,238.20, and that the net amount received at that time by plaintiff from the trustee in bankruptcy on its claim filed in the Turby bankruptcy proceeding was $6,514.64, leaving a loss to plaintiff under the mortgage of $9,723.56, without considering interest accrued since that date.

The trial judge instructed the jury that the bond in question was a completion bond which was breached September 24, 1928, and that the damage for which defendant is liable was "such an amount not in excess of

$10,000 as it cost the Mechanics Trust Company to complete those buildings"; he also instructed the jury to disregard Wallace's testimony as to the profit realized on his agreement with plaintiff to complete the buildings. The court refused defendant's points setting forth its theory that the bond was not to insure completion but to indemnify plaintiff on its mortgage, and also to the effect that the measure of damage was the difference between the amount advanced by plaintiff for the construction of the dwellings and the fair market value of the buildings at the time of the breach considered separate and apart from the land; defendant's offers of evidence upon these points had already been excluded and exceptions noted. The jury found for plaintiff, and a verdict was entered in favor of the bank for $9,837.51, with interest from the date of defalcation, $885.37, making a total of $10,722.88. Defendant's motions for judgment n. o. v. and for a new trial were overruled and this appeal followed.

Without treating separately appellant's thirty assignments of error, we may dispose of the legal matters in the controversy by a discussion of three principal questions which are involved: (a) Is the bond in issue a completion bond or must it be construed only to indemnify plaintiff for loss on its mortgage loan? (b) Assuming the default by Turby on September 24, 1928, what was the measure of damage governing defendant's liability to plaintiff? (c) Did the court err in excluding defendant's above mentioned offers of testimony and in instructing the jury to disregard the testimony of Wallace as to the profits realized on his agreement with plaintiff to complete the buildings?

Turning to the first of the above questions, it is to be noted that the bond on which defendant became surety states that "if the said William H. Turby shall well and faithfully perform his part of the agreement and erect said dwellings, then his obligation shall be void, otherwise to be and remain in full force and effect." The only

logical interpretation to be placed upon the last clause, beginning with the word "otherwise," is that in case Turby failed to erect the buildings, the obligation under the bond would continue to bind him and defendant. It was conceded that Turby did not erect the houses. Under the plain language of the bond defendant was bound to step into the place of the principal upon the latter's default.

Defendant's position that there existed no affirmative undertaking on the part of the principal to erect the dwellings and, consequently, no such obligation on the surety, is untenable. Not only is this contention fallacious because the evidence throughout shows that the money was loaned on the principal's promise to erect the buildings, but because the bond contains the words: "Whereas the said William H. Turby has agreed to erect 2 two story double dwellings." Defendant executed the bond containing that statement, and is now estopped from denying its provisions. "The general rule is that sureties are estopped to deny the facts recited in the obligations signed by them, and this whether the recitals are true or false in fact. Having once solemnly alleged the existence of the facts, they cannot afterwards be heard to deny it": Sokoloff v. Fidelity & Casualty Company of New York, 288 Pa. 211, 217. "A surety undertakes to pay the debt or perform the obligation if the debtor fails to do so. In case of default......the surety is equally liable with the principal": Homewood Peoples Bank v. Hastings, 263 Pa. 260, 264. As was said in Equitable Trust Co. v. National Surety Co., 214 Pa. 159, 162, the covenants in a bond "should be construed to mean what the parties intended in so far as that intention can be ascertained by the words used." The intention is clear in the present case. The words used in the bond provide that the obligation shall be in force if the principal does not perform the specific act of erecting the buildings. Having failed in this respect, he caused the obligation to remain in full force and the

cost of doing what he should have done would appear to be the measure of damage to plaintiff for which defendant is liable. This brings us to a consideration of the second question above stated.

We have frequently said that the trend of modern decisions, federal and state, has been to distinguish between individual and corporate suretyship, where the surety has undertaken, for money, the contract of suretyship which it is its business to sell; in such cases, the contract should be construed most strictly in favor of the obligee: South Philadelphia State Bank v. National Surety Co., 288 Pa. 300, 305-6, and cases there cited. No question of fraud, accident or mistake in the execution of the present bond is pleaded. The measure of damages then, where the contract is breached, follows the general rule that the injured party should be placed in the same position as if there had been no breach. If there had been no breach, the houses would have been completed; accordingly, the measure of damages to plaintiff, since, to protect itself, it bought in the houses and completed them, is the cost of completion, providing that cost was reasonable. The court specifically submitted the question of reasonableness of the cost of completion ($9,851.34) to the jury, whose verdict was in favor of plaintiff for approximately this sum ($9,837.51) with interest from the date of the defalcation. As above stated, plaintiff completed the buildings, with but one minor change, just as Turby had originally planned.

Defendant company, taking a different position on the question of damages than that adhered to in the court below, argues that its liability should be measured by the difference between the value of the property in the condition in which it was left by Turby and the amount of principal and interest due on the mortgage. This theory proceeds upon the erroneous assumption that the bank loaned the $15,000 to Turby solely upon the bond and mortgage executed on February 7, 1928. At the time plaintiff loaned the money, it took an obligation on land

upon which four completed houses *were to be built.* The mortgage was upon land and completed houses. The bank was not satisfied with the security of the bond and mortgage so long as the houses were not in existence and consequently required Turby to give it the additional security of a bond guaranteeing that the houses would be built. Defendant company became surety on Turby's bond that completion of the building would take place. Plaintiff had a right to require the personal surety bond in addition to the other security, and defendant, being paid for the suretyship, was obliged to know the legal effect of its obligation at the time it became surety. Plaintiff, by this bond, protected itself against the possibility of breach by Turby; i. e., the possibility of his not enhancing the value of the premises as he had promised to do. Plaintiff was entitled to have the buildings completed, and the damage to it occasioned by the breach, in so far as concerns the surety on its bond, was the reasonable value of completion. As between the bank and the surety, the liability of the latter is governed solely by the terms of the bond establishing privity between them; the bond was concerned only with the principal's duty to "erect said dwellings" and contemplated but two situations—the performance, or nonperformance, of that duty; its terms involve no mention of loss or profit to plaintiff on the mortgage loan; and in determining defendant's obligation, now that the principal has defaulted, we can look for a criterion of damage only to the cost of finishing the buildings, providing that cost be reasonable. The fallacy of the measure of damages urged by defendant is disclosed if we assume that the value of the uncompleted buildings in the condition in which Wallace found them when he took over the property, was $10,000 or more—the amount of the plaintiff's loan which was to be appropriated to constructing the dwellings. Under this situation, defendant, following its line of reasoning, must necessarily contend there was no liability upon it except for nominal

damages, irrespective of the fact that an expenditure of a considerable sum of money might be required to complete the dwellings. The cases relied on by defendant in which damages accruing to the obligee were based on loss on a mortgage loan were all indemnity rather than, as here, conpletion bonds: Wheeler v. Equitable Trust Co., 206 Pa. 428; Weightman v. Union Trust Co., 208 Pa. 449; and Pennsylvania Co., etc., v. Central Trust & Savings Co., 255 Pa. 322.

The bond upon which defendant was surety imposed an absolute undertaking—to complete the dwellings—which, when the principal defaulted, defendant was bound to perform. This construction is supported by numerous authorities: Janes v. Scott et al., 59 Pa. 178; Union Trust Co. v. Citizens Trust Co., 185 Pa. 217; Equitable Trust Co. v. National Surety Co., 214 Pa. 159. The measure of damages on a bond given to a mortgagee-obligee guaranteeing completion, is the cost of completion (Equitable Trust Co. v. Surety Co., supra; Board of Education v. Maryland Casualty Co., 27 Fed. (2d) 20, 22, 23; and see also Wheeler v. Equitable Trust Co., supra, page 431), and is not limited to the difference between the value of the property in the condition in which it was left and the amount of principal and interest due on the mortgage.

Obviously, appellant is not entitled to share in the profit realized on the dwellings following their completion by appellee. Whatever occurred after appellee became owner and had paid $9,851.34 to obtain what it was entitled to under the bond, is of no moment to defendant. Defendant can claim no credit for the business acumen of plaintiff.

The rejection of defendant's offer to show the value of the property exclusive of the buildings was not error. As we said in Union Trust Co. v. Citizens' Trust Co., 185 Pa. 217, 223: "The value of the lots was not a relevant subject. The plaintiff was suing to recover its advanced payment made upon the security of the defend-

ant's undertaking to guarantee full performance by Klein [Turby, here] under his contract. It was conceded that he did not perform. The value of the lots was unimportant and immaterial, therefore, to the defense, and the evidence offered was properly rejected."

In that case, as in the present, the bond was "not a guaranty of the ability of Klein to do the work, or of his solvency, but a 'guarantee' that he will complete the work as he had contracted to do." (Page 222.) The court's further rulings on evidence, which defendant objects to, show no harmful error and accordingly call for no discussion.

The judgment is affirmed.