MAUDE PAYNE AND BARNEY PAYNE, RESPONDENTS, v. BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK, A CORPORATION, APPELLANT.—77 S. W. (2d) 183.

Kansas City Court of Appeals. November 13, 1934.

*C. W. Crossan* and *L. A. Warden* for respondents.

*McVey, Freet & Randolph* for appellant.

TRIMBLE, J.—The parties to this appeal do not seem to agree upon the nature of the suit in which the judgment was rendered and from which the appeal was taken. In order to properly decide this preliminary matter, it may be well to state that plaintiffs' theory is that it is not merely a suit for the *loss sustained* by reason of the partial destruction by fire of a house insured by defendant in a policy issued by it, but also for *damages for defendant's breach of its obligation to repair* the house after its partial destruction by fire, contained in or created by the policy. Defendant, however, appears to regard the suit as one on the policy to recover the loss sustained by reason of the fire, at least the defense made seems to proceed on that theory.

The petition, in substance, alleged they, as husband and wife, are and were owners by the entirety of a certain lot and a two-story frame dwelling house thereon; that defendant by its policy of insurance did insure said house in the sum of $2000 for a term commencing on January 3, 1928, and ending on January 3, 1933, a period of five years; which policy is now in the possession of the defendant and hence a copy cannot be filed with the petition; that, on the 12th day of March, 1929, and while said policy was in full force and effect, said house was damaged by fire to the extent of $2000.

That plaintiffs gave due notice of said loss and demanded that defendant repair said house "to the extent of the damage so that property should be in as good condition as before said fire;" that

defendant failed to repair said house and has made no repairs thereon, which in the exercise of reasonable diligence could have been made within thirty days; that said demand was made on March 15, 1929, and, in the exercise of reasonable diligence could have been made and completed by April 15, 1929, and at a cost not in excess of $2000; that as a direct result of defendant's failure to repair within a reasonable time (said fire having burned the roof off and otherwise damaged said house), rain and snow have fallen into said house, and upon the floors, plastered walls, woodwork and heating plant so that the damage to said house by reason of said fire and of said rain and snow is now $2250 which amount would now be the cost of repair.

. That if said house had been repaired with reasonable diligence the rental value would have been $20 per month, but by reason of the failure to repair, said house had no rental value, and plaintiffs have received, and could have received, no rent for the use thereof from April 15, 1929, up to the 15th of October, 1931, whereby plaintiffs have been damaged in the further sum of $740, so that plaintiffs have been damaged in the total sum of $2990; that plaintiffs performed all the conditions of said insurance contract required of them.

. Wherefore judgment is prayed in the sum of $2990 with six per cent interest from April 15, 1929.

Defendant filed demurrer to the petition which was overruled, and thereupon it filed answer, which admitted the payment of premium, the issuance of the policy, the damage by fire to the house on March 12, 1929, while said contract of insurance was in full force and effect; otherwise than as herein specifically admitted, the defendant denied generally.

The answer then set up that the policy contained the following:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; . . . . It shall be optional, however, with this company . . . to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described.

"This company shall not be liable for loss caused directly or indirectly . . . . . . by theft; or by the neglect of the insured to use all reasonable means to save and preserve the property at and after a fire."

Also the policy contained further provisions that if fire should occur, the insured should protect the property from further damage; that the actual cash value of the property loss and damage as a result of the fire, after making proper deductions for depreciation and the amount it would have cost assured to repair or replace the same with material of like kind and quality, did not exceed the sum of $800.

That if said property has been damaged otherwise than as the direct result of the fire, it is due to theft, or to neglect of assured to use all reasonable means to protect the property from further damage after the fire occurred; that if any loss occurred from lack of use and occupancy after a reasonable time to make repairs and restorations (all of which is denied), such loss, including loss of use or rent, was directly caused by plaintiffs' negligence in not protecting and preserving the property, and from their failure to make such property inhabitable, in mitigation of damages alleged to have been sustained.

That plaintiffs on or about March 19, 1927, made a deed of trust on said property to the Western Savings & Loan Association to secure a note for $1800; and stipulated in said deed of trust to keep the improvements constantly insured for at least $1800 and keep the policy and all renewals constantly assigned to the Western Savings & Loan Association with power in said Savings Association "to settle and compromise all loss claims, to demand, receive and collect any and all moneys becoming payable thereunder and apply the same" on said indebtedness or upon the repair of reconstruction of said premises and with power in case of foreclosure, to assign to the purchaser the unexpired term of said policies.

That the policy of insurance above referred to was issued in accordance with said provision in said deed of trust; and said policy contained a so-called mortgage clause providing as follows:

"Loss, if any, under this policy, payable to Western Savings & Loan Association, or assigns, as first mortgagee (or Trustee) as such interest may appear; and this insurance, as to the interest of the mortgagee (or Trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by any increase in hazard; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or Trustee) shall, on demand, pay the same."

Said mortgage clause further contained a clause reserving the right to cancel the policy as to the interest of the insured at any time as provided by its terms, and cancel the interest of the mortgagee

(or trustee) by giving the mortgagee (or trustee) ten days' written notice.

"Whereupon this Company shall pay the mortgagee (or Trustee) any loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or Trustee) the whole principal due or to become due with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities, but no subrogation shall impair the right of the mortgagee to recover the full amount of the claim."

The answer then alleged that at the time of the fire the indebtedness of plaintiffs to the Western Savings & Loan Association was unpaid, and the deed of trust was in full force and effect and—

"That under and by virtue of the terms of said deed of trust and of the provisions of said policy above quoted, these plaintiffs had no right, power or authority to elect or to demand that the insurer should repair or replace said property, but did by said deed of trust and the provisions of said policy waive any and all rights they may have had to demand that the insurer repair the property to extent of the damage so that it should be in as good condition as before the fire."

Consequently the answer set up that the plaintiffs "are not the parties in interest or proper parties to this action."

The reply was a general denial and specifically denied that the policy contained any of the above quoted provisions stated in the answer.

The trial of the case was had as if the petition had been amended so as to allege the time to which the house existed without repair, and therefore was without rental value, to be from April 15, 1929, up to and until December 10, 1932, and damages on account of loss of rental value, at the rate of $20 per month, was set at the sum of $860 and judgment for that item was asked instead of $740 as in the original petition. Such amendment was not actually made in the petition, but the cause was tried as if it had been. And the verdict of the jury was for the plaintiffs assessing their damages on the policy at $1650 with interest of $354.75 and damages for defendant's failure to repair at $860, total $2864.75. Judgment was rendered on the verdict and defendant appealed.

The amendment not having been actually inserted in the petition, respondents filed in the appellate court a motion for leave to amend their petition in accordance with the above. The statutes in reference to amendments after trial, and even after verdict and judg-

ment (Secs. 819, 822, R. S. Mo. 1929), are remedial, and, manifestly, in the interest of justice where no change in the cause of action, or difference in the nature and character of the evidence is required, they should be allowed. In Solomon v. Moberly Light & Power Co., 303 Mo. 622, 1. c. 634, the Supreme Court said, "Even if the petition had not been amended below, and leave had been asked to amend it here, we would have followed the settled practice of this court by treating the petition as amended and disposing of the case accordingly" (citing many cases). Under the circumstances of the case at bar, we will treat the petition herein as having been duly amended. Hence the point that the verdict is excessive because the verdict for the item of loss of rent ($860) is more than the amount originally specified therefor in the petition, to-wit, $740, cannot be upheld.

It was stipulated at the trial that the rental value of the house is $20 per month, also certain other facts were agreed to which may be necessary to mention later in this opinion.

Are the plaintiffs the proper parties to bring this suit against the insurance company for failure to repair the partially destroyed premises upon demand of the insured? Defendant contends they are not, and this is the ground of its demurrer.

The property was subject to a deed of trust, or which may for brevity be termed a mortgage, and the policy contained a clause with reference to it which provided that loss, if any, under the policy, should be payable to the mortgagees as its interest may appear, and such mortgagee's interest should not be invalidated by any act of the mortgagor or owner, and since the courts have generally held that the mortgage clause constitutes an independent contract between the mortgagee and the insurance company, and that the former is not bound by an adjustment between the mortgagor or owner and the insurer, made without the mortgagee's consent, the defendant urges that this suit by the plaintiffs alone cannot be maintained.

Plaintiffs however rely upon Section 5821, Revised Statutes of Missouri, 1929, which provides that whenever the destruction or damage is partial, it shall be the duty of the insurance company to pay the insured money equal to the damage, or repair the property *at the option of the insured.* And Section 699, Revised Statutes of Missouri, 1929, provides that a trustee of an express trust may sue in his own name without joining the one for whose benefit the suit is prosecuted, and says that a trustee of an express trust within the meaning of the section "shall be construed to include a person with whom or in whose name a contract is made for the benefit of another." So that, under Section 5821, plaintiffs as the owners of the property, and not the mortgagee, were the parties to make

the election. The policy was issued to them and in their names and not to the mortgagee nor in its name, and, to the extent of that part of the insurance as might be due the mortgagee, the plaintiffs were and are the trustee of an express trust as defined by Section 699, capable of suing herein, and hence the mortgagee is not a necessary party. [Still v. Connecticut Fire Ins. Co., 185 Mo. App. 550, 558; Anthony v. German-American Ins. Co. of New York, 48 Mo. App. 65.] The definition of the term "trustee of an express trust" is enlarged by Section 699 so as to include, not only those who are such under the ordinary rules of equity, but also those in whose name contracts are made for the benefit of a third person. [De Giverville Land Co. v. Thompson, 190 Mo. App. 682, 701.]

Since the policy was issued with Section 5821 in force, it (the policy) was governed and controlled by the statute, so that when the main contractual clause or engagement in the policy is that the company "does insure . . . against all direct loss or damage by fire," and there is a *partial* destruction of, or damage to, the property from such cause, the statute says the obligations is *either* to pay the loss in money, *or repair* the house at the insured's option. And insured exercised the latter option. The owners were the ones primarily insured and the mortgagees secondarily. In so far as the insurance is in favor of the mortgagee, the owner is, under Section 699, trustee for the mortgagee's benefit. It was stipulated that, for the purposes of this case, the indebtedness amounted on November 20, 1932 (trial was had on December 9, 1932), to $1302.41. That was the extent of the mortgagee's interest. To this extent, the owners were trustees for the mortgagee, and since the statute (Section 5821) gave the option to the owners, i. e., the insured, they could elect for the mortgagee and for themselves, while the mortgagee could not so choose, for it is not a trustee for the owners. Since the statute puts the obligation on the insurance company and makes the election in the alternative and gives the election or option to the insured, it would seem that it makes no difference if the latter elects to have the company repair and then, when the company refuses to perform its obligation, brings a suit on its failure to perform.

The policy is issued to the owners with a provision that loss, if any, shall be paid to a mortgagee as its interest may appear, consequently when the statute says the company shall either pay the loss in money or repair "at the option of the insured," evidently it means the owners and not the mortgagee shall have the option. The entire insurance is for the benefit of the owner; for any payment by the company to the mortgagee is for the owner's benefit to the extent that the debt is discharged. The company engages to pay loss to the owners, and to the mortgagee such part of the insurance payable to the latter, but does not promise the mortgagee

to pay the owners such part as may be due to them, so that the owners (plaintiffs) are parties to the *entire* contract while the mortgagee is a party to only a *portion* thereof. Again, the loss insured against falls on the owners to a certainty, but only to the mortgagee in the event of the insolvency of the owners, and then only to the value of his security.

The fact that the deed of trust provides that the mortgagee shall have the right "to adjust claims and demands for losses or to have the premises rebuilt" has no bearing herein for the reason that this refers to insurance under policies in another company to be issued to the mortgagor and *assigned* to the mortgagor, but these run out and the mortgagee accepted security effected by the policy and mortgage clause involved in this suit.

It may well be granted that even though the insurance afforded by the mortgage clause in the mortgagee's favor, is for purposes separate from that given to the owners by the policy, still the owners of the property are not authorized thereby to compromise the mortgagee's right. There would seem to be no attempt to do this. The question here is, who under Section 5821 are, or is, entitled to exercise the option? To demand that the house be repaired and restored as it was before the fire, would seem to be an effort to preserve the mortgagee's security rather than to compromise or destroy that right, and the power to enforce that right by an action of damages for failure to fulfill the company's obligation in that regard, would be of a similar nature, especially as plaintiffs' status in such suit is that they are trustees, under the statute, for said mortgagee to the extent of his interest. The rights of the parties are fixed by the terms of the contract actually made, which was the policy plus the mortgage-clause plus the statute controlling them under the circumstances involved. With the contract as thus constituted, the rights of the mortgagee cannot be defeated by any act or neglect of the owners. On the other hand, the company cannot reply upon a contract for its benefit, which is not the contract made, and to which it, the insurance company, was not a party.

The measure of damages in this case, for failure to repair, is not the same as in an ordinary building contract. For here the duty to repair is a *public duty* laid upon the insurance company by a statute, in the event the owners, constituting the insured, exercise their option to have the building repaired. In a mere *private* building contract, the defaulting party cannot be *compelled* to construct the building, but may decline to do so, being liable only in damages for failure to comply with the contract.

So also, in the former situation, when the owners, by their option to have the insurance company repair, have cast that duty and burden on the insurance company, it cannot escape by saying the

owners should have protected the property from the *additional* damage caused solely by the failure and refusal of the company to perform its contractual and governmentally imposed duty.

There was no error in giving plaintiffs' Instruction No. 3. It told the jury that if they found for plaintiffs they should allow "such sum as you' may find and believe from the evidence it would have taken to repair and replace the property in as good condition as it was immediately before the fire, to which you may add interest thereon at six per cent (6%) from April 12, 1929, to date, not exceeding, however the sum of two thousand dollars ($2000), and in addition to this sum if you further find and believe that plaintiffs have been damaged by defendant's failure within a reasonable time to repair and replace said property in as good condition as it was immediately before the fire, then you may allow them such reasonable amount as you may find and believe from the evidence would fairly and justly compensate them after the expiration of such reasonable time, for such damages, and in this connection you are instructed that plaintiffs and defendant have agreed that the fair and reasonable measures of damages for the loss of the use of said property is twenty ($20) dollars per month." One error charged is that the instruction fails to tell the jury that elements constitute consequential damages, or how they should be measured. We think this was properly covered by the last part of the instruction as to the agreement between the parties that $20 per month was a fair and reasonable measure of damages. There were no other elements of consequential damages relied upon or contained in the evidence save and except the loss of rent. And the verdict shows on its face that the jury allowed only that element for consequential damages.

A further claim of error in the instruction is based upon the erroneous theory, as we think, that when the insurance company refused to repair, then it was the duty of the owners (the insured) to repair the building themselves, and therefore the Instruction No. 3 was erroneous in not limiting the jury to the time it would reasonably take the owners to so repair. As we have heretofore stated, this claim of error is based upon a mistaken theory that it was the duty of the *owners* to do what was the *company's* duty to do, in order to minimize the company's damage for its own default. We are unable to uphold such a theory. For this reason also it was not error to refuse defendant's Instruction No. 4.

The point that plaintiffs' Instructions 3 and 6 were both erroneous is not requiring the damages to be itemized, is likewise without merit. They were itemized to the extent that the evidence, and the nature of the damages, required, namely for not actually making the repairs and for the consequential loss of rent.

There was no error in allowing interest on the damages from the date April 12, 1929, which was thirty days after the demand that the company repair. The rule as to no interest being allowed on unliquidated demands is because the amount not being known payment could not be made so as to stop interest. But in the case at bar, after demand was made, the defendant could have avoided interest by making the repairs within the thirty days which, it is agreed, was a reasonable time to repair.

The appellant, insurance company, has cited numerous cases in support of its contention but an examination of them shows that the facts are so different from those in the case at bar, that the cited cases are not in point on the ultimate questions here. Again, they are cases in states where there are no statutes as Sections 699 and 5821, the last of which materially affects the contract of insurance and the rights of the parties thereto.

Much stress is laid upon the fact that the total judgment is for a larger amount than the amount specified as the sum of which defendant agreed to insure.

The amount assessed for damages caused by the fire is less than the amount of specified insurance therefor, and the damage caused by defendant's failure to repair, is not limited to the amount of specified insurance. Even in states which do not have a statute obligating the insurance company to repair at the option of the insured, it is held that an agreement or election to repair, obligates the company to complete the repairs even though the cost thereof exceeds the amount of the policy. [Henderson v. Crescent Ins. Co., 35 L. R. A. 389; Morrell v. Irving Fire Ins. Co., 33 N. Y. 428, 88 Am. Dec. 396; Fire Assn. v. Rosenthal, 108 Pa. 476, 1 Atl. 303.] It has also been held that where the insurance company fails to repair after it has elected so to do, interest can be had. [Home Mutual Fire Ins. Co. v. Garfield, 60 Ill. 124.]

Entertaining the views expressed in the foregoing, we are constrained to affirm the judgment. It is so ordered. All concur.