Willie S. SAMUELS and Alma Jean Samuels,
Plaintiffs-Respondents,

v.

ILLINOIS FIRE INSURANCE COMPANY,
a corporation, Defendant-Appellant.

No. 23364.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1961.

On Motion for Rehearing Feb. 5, 1962.

George W. Meyer, Meyer, Smith & Shute, Kansas City, for appellant.

Lillie Knight, Kansas City, for respondents.

CROSS, Judge.

Plaintiffs, husband and wife, sue defendant insurance company to recover damages for breach of its duty to complete repairs on their dwelling house which was damaged by fire. Defendant appeals from a judgment entered on a jury verdict awarding plaintiffs damages in the sum of $7,667.00.

On December 9, 1955, defendant issued a fire insurance policy in the amount of $5000.00 on plaintiffs' four room bungalow for a term of five years. On April 8, 1959, and while the policy was in force, the house was partially destroyed by a fire. Plaintiffs duly notified defendant of the fire and entered into negotiations with defendant for payment of their loss.

At the request of defendant, plaintiffs furnished two estimates of the cost of repairs, amounting to $4,475.00 and $4,485.50, respectively. Defendant secured a contractor's bid in the amount of $1719.00 and an additional estimate in the sum of $1838.00, and informed plaintiffs it would not pay more than the first named amount for the repairs. Plaintiffs were also informed that they would have to employ the contractor. Plaintiffs refused the offer and the negotiations ended.

On April 24, 1959, plaintiffs gave defendant notice in writing to repair the building in accordance with the provisions of Section 379.150, V.A.M.S., which reads as follows:

"Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured".

Defendant thereafter employed B. E. Baer, a contractor, to repair the house at a cost of $3143.00. Baer took over the property and began the repairs during the week of July 21, 1959, but discontinued after working a few days, and abandoned the property. No further repairs were ever made.

Plaintiffs filed this suit on August 4, 1959. In their amended petition they allege that defendant was not diligent in repairing the house; that with reasonable diligence the repairs could have been completed by June 24, 1959, and at a cost not to exceed $5000.-00; that defendant, after employing its contractor to do the work in July, 1959, stopped the repairs after a few days and refused to proceed further with them; that defendant abandoned and left the house open and without protection from the weather, permitting the entry of snow and rain; that the action of those elements, during the long delay that ensued without completion of the repairs, caused the repairable portion of the house which survived the fire to become weakened, deteriorated, irreparable, and unfit for use and beyond repair, and made it necessary to tear down and remove the remaining portion of the house and to build a new structure. Plaintiffs claim damages amounting to the cost of tearing down and rebuilding the house, and their loss of its rental value.

The principal issue of fact in this case is whether it was possible to repair the damaged structure as it stood at the time of trial, so that it would be in as good condition as before the fire. Defendant so contends—plaintiffs to the contrary. Plaintiffs claim it was not possible to use any of the damaged building (except the foundation, sewer and excavation), but that it was necessary to tear down and rebuild the standing portion in order to restore it to as good condition as it was in before the fire.

The house is of frame structure, with stucco exterior, containing three rooms on the first floor and a fully finished bedroom with a large closet on the second floor. It has a full basement which contains a sleeping room, a full bathroom, a hot water tank and a furnace. The first and second floor walls are lath and plaster. The roof is cov-

ered with asphalt shingles. The house has two porches, front and rear. A witness for plaintiffs estimated the age of the house at 20 years. Defendant's witness estimated the house to be from 35 to 40 years old. It was agreed between the parties that the house was rented for $50.00 per month, at the time of the fire. For the previous nine years it had been leased and occupied by the same tenants.

The fire caused considerable damage to the millwork, walls and decorations in the three rooms on the first floor and in the second floor room. All the wood trim around the windows and doors was burned, and the floors and stairway to the second floor were scorched and blistered. The fire burned through the lath in many places on the walls. One exterior wall had a hole burned through it to the outside. All the windows were broken out. There were large holes in the ceilings of the first floor. The ceiling of the front porch was blistered and burned. The outside doors were burned and the guttering was destroyed. The outside stucco surface of the house was damaged and discolored by smoke.

It was plaintiffs' testimony that soon after the fire they cleaned up the debris and boarded up the windows and doors, but that shortly after August 1, 1959, they discovered that the boards had been removed and that all the windows in the house were open except those opening onto the porches, that some new window frames had been made and installed, but that the work had been abandoned. It appears that the house remained open and exposed to the weather until the date of trial, October 24, 1960.

Plaintiffs produced three witnesses who testified that the standing damaged structure was unsuitable for use in restoration of the house. Leon Maslan, an architect and consulting engineer, examined the building on October 20, 1960. He found: the windows were all out; the basement door was open; upstairs, all the windows were open; the plaster on the ceilings and walls was falling off; the floors sagged, "it was quite obvious that the water had been standing on the floors"; what remained of the light fixtures were rusted; the furnace was completely rusted out and the ducts had fallen out; freezing and thawing had destroyed the electric wiring; the plumbing pipes had rusted out; the bathroom fixtures were rusty from exposure to the weather; moisture had rusted the metal stucco support and the stucco was loosened; the studs, floors and floor joists had deteriorated, sagged and become unusable as a result of exposure to snow, rain, heat, cold, and moisture in the air; freezing and thawing had caused the mortar between the cement blocks in the foundation to deteriorate and powder out and it would take considerable work to restore the foundation; the roof was usable, but the expense of shoring it up while the studs and flooring were replaced would be prohibitive, and it would not be possible to match the color of the shingles. The witness stated that the excavation and the main sewer could be used in rebuilding; that the cheapest construction possible is $10.00 per square foot, and that it would cost $6000 to rebuild the house, making use of the excavation, foundation and main sewer. Claude A. Bloomer, a building contractor, inspected the building in May, 1960. He testified that: the foundation was cracked and deteriorated but it could possibly be used if repaired; the main sewer could be used in rebuilding the house; the remaining portion of the house could not be used in rebuilding because the floor joists, floors and studs would have to be removed and replaced; the interior walls and floors were not usable; a house damaged by fire and left open to the weather and moisture for 18 months would deteriorate so that the wood in the structure would not be suitable for use. The witness stated that a house could not be built for less than $10.00 a square foot and that it would cost between $6000 and $7500 to tear down and remove the unusable portion of the building and rebuild it. Robert F. Coleman, an experienced house builder, also testified that the standing portions of the house could not be repaired and

used, and that it would "now" cost between $6500 and $7500 to rebuild the house.

Defendant introduced testimony to the effect that the damaged house could be repaired without being torn down and rebuilt. William G. Nelson (the contractor who submitted the original bid of $1719.00) examined the house four times. He stated that there was no deterioration in the joists, walls, studding, steps, rafters and the entire structure; and, that he could repair the building "right now" for $3792.00 and put the house back in first class condition. The witness testified that if the foundation and main sewer were the only usable parts of the building it would cost $6871.00 to rebuild the house. B. E. Baer testified for defendant that it had employed him to make the repairs on plaintiffs' home for an agreed price of $3143.00, that he began and performed repairs of a value of $133.40, but discontinued the work, at defendant's request. The witness testified that he closed the windows and doors when he left the property and stated that in his opinion the house was structurally sound and could be repaired. C. P. Conway, a foreman employed by B. E. Baer, also testified on defendant's behalf. He was in charge of the repairs which Baer started to make on plaintiffs' house. He testified that when the work was closed down a few days later the windows and doors were boarded up and that in his opinion the house was repairable at the time of the trial. R. O. Cope, a building contractor, testified that at defendant's request he submitted an estimate of the cost of repairing the damaged house in the sum of $1838.00. He stated that the repairs could have been made in 30 days.

Plaintiffs submitted the case on a single instruction, which is as follows:

### "INSTRUCTION NUMBER ONE.

"The Court instructs the jury that when the plaintiffs gave notice to the defendant to repair the property in question on April 24, 1959, it was the duty of the defendant to repair said property within a reasonable time, to the extent of the damage done by said fire, not exceeding the amount of said insurance, so that said property would be in as good condition as before the fire, and the defendant became liable in damages to the plaintiffs for any damage they may have suffered as a direct result of defendant's failure to complete said repairs, even though said damages exceed the amount of said insurance.

"You are therefore instructed that in determining the amount of plaintiffs' damages you should allow them such sum as you find and believe from the evidence would reasonably compensate them for whatever damages they have suffered as a result of defendant's failure to complete said repairs, and in this connection you may take into consideration the amount it will now cost to rebuild said property, so that it will be in as good condition as before the fire, and the reasonable rental value of said property for the loss of the use of same from the date on which you find said repairs could have been reasonably completed, to this date."

■ Defendant says the court erred in giving plaintiffs' instruction because it permitted the jury to award plaintiffs' damages, in "the amount it will now cost to rebuild said property so that it would be in as good condition as before the fire". Instead, defendant argues, the instruction should have told the jury "the damages must be proved by the difference in the value (of the house) before and after the injury or the cost of restoration, whichever (sum) is less". Under the facts in this case we cannot rule that the jury should have been so instructed. Defendant rests its argument for the proposition on authority of Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158. That case (which arose in Illinois and was tried under Illinois law) was brought to recover for permanent damages

directly inflicted upon plaintiff's real estate by the actual physical trespass of defendant, who wrongfully dug a ditch partly on plaintiff's land. Water seeped from the ditch and damaged plaintiff's building. There was no contract or statutory duty involved in the case and no contractual relationship between the parties. Defendant was not sued for breach of contract, but for the commission of a tort. The court there held that the proper measure of plaintiff's recovery was not "the reasonable value of the repairs necessary to restore plaintiffs' building", but that plaintiff's damages were to be gauged by the general rule that the measure of damages to real estate caused by trespass or negligence is the difference in value of the land before and after the injury, applied together with the rule that "where damaged land or a building thereon can be restored to its former condition, at a cost *less* than the diminution in value, the cost of restoration may be recovered". The foregoing measures of recovery apply in cases involving damage to real estate arising from trespass and negligence. They have no application here.

■■■■ This action, unlike the Curtis case, is based on the defendant's violation of its statutory duty. When plaintiffs elected to have defendant repair their property, under an option provided by Section 379.150 V.A.M.S., the policy became, in effect, a contract for repairs—a *building contract* imposed by law. It was a new and independent undertaking enjoined upon defendant, by plaintiffs' election under the statute to restore the house to its former condition. Thereby, defendant became a "building contractor" (as an insurer was held to be in Cussler v. Fireman's Insur-

ance Co., 194 Minn. 325, 260 N.W. 353). And, as said in Zalesky v. Iowa State Insurance Co., 102 Iowa 512, 70 N.W. 187, 71 N.W. 433 "this case should be considered the same as though the contract between the insurance company and the plaintiff were a contract to repair and rebuild this property". See 6 Appleman, Insurance, Sec. 4003. From the foregoing, it necessarily follows that plaintiffs' damages in this case are to be gauged by the measure of damages applicable in building contract cases wherein a defendant contractor has breached his contract. That measure is clearly defined by general authority and by Missouri courts. Corbin on Contracts, Sec. 1089, states the rule as follows: "For a breach by defective construction, whether it is partial or total, and for a total breach by refusal and failure to complete the work, the injured party can get a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste (destruction of usable property). Sometimes the defects in a structure cannot be physically remedied without tearing down and rebuilding".

In 25 C.J.S. Damages § 74 (Note 46) the following is stated: *"Building and Construction Contracts.* (1) In case of failure to perform, the measure of damages is the difference between the contract price and the fair cash market price or value of the doing of the work contracted for.[1] * * * (2) As otherwise stated, plaintiff is entitled to recover the difference between the contract price and the actual cost of doing the work.[2] * * * (6) Damages recov-

1. Citing: In re Carrier, D.C.Mass., 21 F.2d 589; Bertram v. Bergquist, 153 Ill.App. 43; Leslie v. Billingsley, 176 Minn. 402, 223 N.W. 456; Noonan v. Independence Indemnity Co., 41 S.W.2d 162, 167, 328 Mo. 706, 76 A.L.R. 931; Simons v. Wittmann, 113 Mo.App. 357, 88 S.W. 791; Feroe v. B. H. Brooke Co., 219 App.Div. 107, 219 N.Y.S. 97, affirmed Feroe v. B. H. Brooks Co., 247 N.Y. 590, 161 N.E.

194; Mechanics' Trust Co. v. Fidelity & Casualty Co. of New York, 304 Pa. 526, 156 A. 146; Huskey Mfg. Co. v. Friel-McLeister Co., 84 Pa.Super. 328.

2. Citing: Elias v. Wright, C.C.A.N.Y., 276 F. 908; Brady v. Oliver, 125 Tenn. 595, 147 S.W. 1135, 41 L.R.A.,N.S., 60; Clem Lumber Co. v. Marty, Tex.Civ.App., 23 S.W.2d 319, error refused.

erable by a mortgagee for breach of a building contract guaranteeing completion of buildings is the cost of completion".[3]

The following is quoted from 9 C.J., Building and Construction Contracts, page 812, (cited with approval in Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S.W.2d 162, 167, 76 A.L.R. 931, and Pioneer Construction Co. v. Schmidt, Mo. Sup., 192 S.W.2d 859):

"In case of failure to perform, the measure of damages is the difference between the contract price and the fair cash market price or value of the doing of the work contracted for, together with loss of rents for such reasonable time after the time the building should have been completed under the contract as will permit the owner to complete the building. * * Where the builder defaults, as in failing to complete the work within the time specified without a sufficient excuse therefor, or in unjustifiably abandoning the work before completion, or otherwise, the owner may generally take possession of the work and complete it himself or employ another so to do, and charge the builder with the necessary expense thereof; * *."

In Pioneer Construction Co., v. Schmidt, Mo.Sup., 192 S.W.2d 859, the Supreme Court defined the measure of damages for the breach of a construction contract to be "briefly, the reasonable cost of completion". Also see: Wright v. Sanderson & Sims, 20 Mo.App. 534. In view of all the foregoing, we rule that the court incorporated the proper measure of damages in the instruction.

As a further complaint against plaintiffs' instruction, defendant says that it erroneously permitted the jury to return a verdict in excess of the policy limit and also in excess of the amount of defendant's liability for repairs as limited by Section 379.150

V.A.M.S., both of which are $5000.00. The case, Payne v. Bankers' & Shippers' Ins. Co. of New York, 229 Mo.App. 901, 77 S.W.2d 183, is directly in point and controlling on the present question. We find no other Missouri case with similar facts. In the Payne case plaintiffs also sustained a partial fire loss. They elected and demanded of their insurer that it repair their house in compliance with present Section 379.150. The insurer refused to make the repairs which admittedly could have been done in 30 days at a cost not to exceed the policy amount. Plaintiff filed suit to recover the cost of repairs and additional damages alleged to have resulted from insured's failure to repair. Upon trial the jury awarded plaintiffs a sum in excess of the policy amount. Sustaining the verdict and judgment this court said:

"Much stress is laid upon the fact that the total judgment is for a larger amount than the amount specified as the sum for which defendant agreed to insure.

"The amount assessed for damages caused by the fire is less than the amount of specified insurance therefor, and the damage caused by defendant's failure to repair is not limited to the amount of specified insurance. Even in states which do not have a statute obligating the insurance company to repair at the option of the insured, it is held that an agreement or election to repair obligates the company to complete the repairs, even though the cost thereof exceeds the amount of the policy. Henderson v. Crescent Ins. Co., 48 La.Ann. 1176, 20 So. 658, 35 L.R.A. 385; Morrell v. Irving Fire Ins. Co., 33 N.Y. 429, 88 Am.Dec. 396; Fire Ass'n v. Rosenthal, 108 Pa. 476, 1 A. 303."

The foregoing portion of the Payne opinion is consonant with the general rule

3. Citing: Trainor Co. v. Aetna Casualty & Surety Co., Pa., 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162, reversing C.C.A. 62 F.2d 487, affirming D.C., 49 F.2d 769, certiorari granted 289 U.S. 718, 53 S.Ct. 659, 77 L. Ed. 1070.

stated in Appleman, Insurance Law and Practice, Sec. 4003, as follows:

"Where the insurer elects to rebuild, the amount of money indemnity stipulated under the alternative clause of the policy ceases to be the measure of damages, but the insurer's liability for a breach of the rebuilding agreement may be more or less than the total insurance".

Also see Fire Association v. Rosenthal, 108 Pa. 474, 1 A. 303; Keystone Paper Mills Co. v. Pennsylvania Fire Ins. Co., 1927, 291 Pa. 119, 139 A. 627; Hartford Fire Ins. Co. v. Peebles' Hotel Co., C.C.A.Tenn. 1897, 82 F. 546, 27 C.C.A. 223; Morrell v. Irving Fire Ins. Co., 1865, 33 N.Y. 429, 88 Am.Dec. 396; Henderson v. Crescent Ins. Co., 1896, 48 La.Ann. 1176, 20 So. 658, 35 L.R.A. 385.

 So that no confusion arise regarding this court's views on the effect of the limitation set by Section 379.150 in the words "not exceeding the amount written in the policy", we deem it advisable to state them. Under Section 379.150, upon demand of the policyholder, an insurer has the absolute duty to repair property partially destroyed by fire, so that it shall be in as good condition as before the fire— limited to the expenditure of the amount of insurance provided by the policy. It is clear that the statute requires the insurer which enters into the performance of this duty to expend no more for repairs than the amount of the policy. So long as the insurer complies with the statute *by performing its duty*, it rests within the limiting protection the enactment affords. However, we read nothing in the statute that purports to limit or define the amount of damages for which the insurer is liable *when it breaches its statutorily mandated duty*. In the event of such breach, we look to the general law to find the appropriate measure of damages flowing from that dereliction. It is a fundamental principle of law that when a contract duty is breached, the party suffering the wrong is entitled to that for which he bargained—he should not be compelled to accept less. 17 C.J.S. Contracts, § 458, p. 943. In accordance with that principle and the authority heretofore cited and quoted, we have made our determination that the proper measure in this case is the cost of restoring plaintiffs' house to its former condition.

A review of the evidence discloses convincingly that no violation of the statutory limitation was occasioned by the jury verdict and judgment exceeding the policy amount. The evidence of both plaintiff and defendant establishes that immediately after the fire the house could have been repaired and replaced in as good condition as before the fire for less than the policy amount of $5000.00. At defendant's direction, plaintiffs procured two estimates of total repair cost in the respective amounts of $4475.00 and $4485.50. Defendant procured estimates in the amounts of $1719.00 and $1838.00. Defendant admits that it actually started to make repairs and then abandoned the work in a few days. Defendant's own evidence discloses that the firm contract price agreed upon with the contractor it had engaged to restore the house to its former condition was in the sum of $3143.00. Thus it is clear that had defendant complied with its statutory duty, its liability would have been less than the policy amount of $5000.00.

 Obviously, the legislature in enacting Section 379.150 did not intend that an insurer performing its statutory duty in good faith should be held liable to expend more than the policy limit. In the case at bar, the situation is vastly different. Defendant, for no explained reason, has ignored its statutorily imposed obligation to repair, thereby causing plaintiff to suffer additional damages, consisting of materially increased repair costs and loss of rentals, as shown by the evidence, for which defendant alone is responsible under all the testimony. The jury's verdict and the judgment are fully supported by the evidence. We find no error therein as contended.

It has been suggested by appellant in its reply brief that the Payne case should be disapproved because it permits an award of damages in excess of the amount for which an insurance policy is issued. We decline to disturb the Payne case because we believe it properly declares the law. It is our opinion that the Payne case does not impose any obligation on an insurer to expend more than the policy amount when the insurer faithfully observes its duty to repair pursuant to the insured's election under the statute. The Payne case does declare that when the insurer fails in the observance of its duty to repair by violating Section 379.150, that statute ceases to limit insureds' recovery to the policy amount. We reaffirm the principles declared in the Payne case and still consider them controlling on the issues herein.

Defendant insists that it was reversible error to submit the case "solely under an intruction on the measure of damages". We must rule against defendant on this point because its premise is not factually correct. The trial court did not instruct solely on the measure of damages. The jury was instructed comprehensively on the issues in the case by the effect of plaintiffs' single instruction. The first paragraph is actually a verdict directing instruction in a strictly literal sense. That part of the instruction (essentially) informs the jury (1) that it was defendant's duty to repair the property (defining the manner of performance) and (2) that defendant became liable in damages for its failure to complete the repairs. Those legal conclusions are supported by the record and foreclosed from dispute. The first paragraph submits nothing for the jury to find on the question of defendant's liability. It correctly informs the jury that as a matter of law, under the evidence, and as determined by the court, defendant was in fact liable for damages. No further instruction (essential to plaintiffs' case) was necessary, except on the measure of damages, to which the second paragraph is devoted.

■ Defendant complains that the jury was not required to find on the controverted issues of fact—in particular, whether, at the time of trial, the building was structurally sound and could be repaired, or whether it was unusable for repairs and had to be torn down—since those issues were not mentioned in plaintiffs' instruction or contained in any accompanying instruction. We find no merit in the complaint. Plaintiffs' instruction told the jury to "take into consideration the amount it will now cost to rebuild said property so that it will be in as good condition as before the fire". It was not possible for them to determine that sum without first deciding whether or not the house was repairable. According to plaintiffs' evidence the damaged structure was not usable for repairs, as of the time of the trial. Under defendant's evidence it could be so utilized. The instruction permitted the jury to find the existence of either state of facts and to make its award accordingly. The jury's verdict is in a sum that, as shown by the evidence, would be necessary to pay the cost of tearing down and rebuilding the house. The verdict itself gives rise to a presumption that the jury found that the house could not be repaired as it stood at the time of trial. We are permitted to presume, in support of the verdict and judgment, that the jury properly and fairly understood, weighed and considered all matters which it was their duty to consider and regard in arriving at their verdict. 5 C.J.S. Appeal and Error § 1562; Haycraft v. Haycraft, Mo.App., 154 S.W.2d 617.

■ The trial court of its own motion gave the form of verdict instruction which reads in part as follows: "The Court further instructs you that under the evidence in this case your verdict must be for the plaintiffs for some amount". Defendant contends that the above instruction and plaintiffs' instruction, as read together, are misleading, amount to a direction to the jury to return a verdict based solely on the

cost of building a completely new house, and foreclose consideration of defendant's contention that the house could be repaired as it stood, because, defendant argues, the word "rebuild" as used in plaintiffs' instruction connotes the building of a completely brand new house after razing the damaged building. We consider the point to be without merit, in view of the following alternate definition of the word "rebuild" stated in Funk & Wagnalls New Standard Dictionary, Unabridged: "To make extensive repairs or alterations on".

 Next assigned as error is the trial court's refusal to give Instruction No. 13, at defendant's request. It is argued that defendant was thereby deprived of a defense and of its right to have the jury consider evidence in its favor. The instruction reads as follows:

"The Court instructs the jury that in assessing the damages, if any, you may find and believe the plaintiffs are entitled to, you may consider the cost of using the dwelling in the condition it now is, as shown by the evidence. And you may also consider the cost of repairing said dwelling so that it will be in as good condition as you may find and believe it was in before the fire. And if you find it can be repaired in its present condition, you will disregard all evidence of the cost of completely rebuilding the same".

Defendant's specific complaint is that the court's refusal of the instruction denied defendant the right to have the jury determine whether the house could be repaired without tearing it down (at the time of trial) and to have the jury disregard the cost of completely rebuilding the structure if they found it could be repaired (as submitted in the instruction). It is true, as defendant argues, and as stated in Jackson v. Farmers Union Live Stock Commission Co., 238 Mo.App. 449, 181 S.W.2d 211, that each of the parties has a right to have his view of the law presented in a form acceptable to him; that a party has a right to an instruction placing before the jury, in plain and direct terms, every legal phase of the case which is justified by the evidence; and, that a party is entitled to an instruction based upon evidence which favors him, even though such evidence may conflict with evidence offered by the opposing party. However, we believe the proffered instruction does not conform to the foregoing and generally observed standards. It contains terms which are not plain and direct, and language which is vague and ambiguous. The statement, "you may consider the cost of using the dwelling in the condition it now is, as shown by the evidence", is, in our opinion susceptible of at least two interpretations by the jury. They could have construed "using the building" as meaning either (1) using it as a building *per se* or (2) using it as a basic structure for repairs. There is more serious fault in the following sentence contained in the instruction: "And if you find it can be repaired in its present condition, you will disregard all evidence of the cost of completely rebuilding the same". The foregoing sentence, an integral unit of language, complete within itself, is a positive misdeclaration of the law amounting to error. Absent from it is the critical qualification "so that the property shall be in as good condition as before the fire". The fact that the missing element appears earlier in the instruction does not cure the vice. Instead, it creates an ambiguity. The instruction as offered was potentially misleading and confusing. The trial court committed no error by refusing it. Kelley v. United Mutual Insurance Ass'n, 236 Mo.App. 748, 149 S.W.2d 905. There is no duty on the court to instruct the jury from defendant's standpoint unless properly requested to do so. Douglas v. Whitledge, Mo.App., 302 S.W.2d 294. It is not error to deny a request for an instruction unless it is correct in all respects. Trustees of Christian University v. Hoffman, 95 Mo.App. 488, 69 S.W. 1. c. 476. The language of an instruction should be so plain that no doubt can arise as to its meaning. Morris v.

Morris, 28 Mo. 114, 118. Instructions should be clear declarations of the law applicable to the facts and if open to two or more constructions, one of which is at variance with the law, the instructions should be refused. Instructions should be substantially correct in both form and circumstances. McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W.2d 907, 910; Roberson v. Loose-Wiles Biscuit Company, Mo.App., 285 S.W. 127, 130 Dunn v. Dunnaker, 87 Mo. 597, loc. cit. 602; 88 C.J.S. Trial § 408. Also see Schipper et al. v. Brashear Truck Co., Mo., 132 S.W.2d 993, 125 A.L.R. 674.

◼ Defendant contends that the trial court erred in refusing defendant's offer to prove the purchase price paid for the property by plaintiffs in 1955. Defendant argues that the amount paid for the property was competent "as shedding some light on the value of the property before the fire". The trial court properly refused the offer. There is no issue in this case relative to the value of the house prior to the loss.

◼ Defendant further contends that the trial court also erred in excluding policy clauses offered in evidence providing that in case of loss the insured shall "protect the property from further damage". Defendant says that under those provisions it was not obligated to repair or pay for damage caused by "vandalism" committed between the date of the fire and the date plaintiffs gave insurer notice to repair. The "vandalism" charged is the alleged theft of the hot water heater, wash bowl and kitchen sink. Defendant offered no evidence tending to establish that the theft occurred because of any duty omitted by plaintiffs. There was no evidence of anything that could or should have been done by insured to prevent the theft of plumbing fixtures from the property which had been so extensively damaged by fire as to be exposed to entrance and theft. In the absence of such evidence, the policy provisions were immaterial. The trial court's exclusion of them from the evidence was not error.

For final consideration, we have reserved defendant's point (1) that the verdict is so grossly excessive as to shock the conscience, and (2) is excessive "because of the erroneous measure of damages". The assignment is without merit.

The amount of the verdict, $7667.00 is fully supported by the evidence. There was testimony from which the jury could find that plaintiffs lost the rental value of their house for at least fourteen months, in a total sum of $700.00. Under plaintiffs' evidence, the jury could find that the cost of tearing down and replacing the house would be in a sum as much as $7500.00. Defendant's testimony shows that cost to be the sum of $6871.00. It is therefore apparent that the verdict is well within the evidence on the damage issue.

◼ Although the measure of damage instruction has been discussed at length, further brief comment is in order. We are not suggesting in this opinion that plaintiffs' instruction is a model of perfection or that it should be adopted as a pattern for imitation. We do rule, however, that it is a correct statement of the law as applied to the facts in this case, that it contains no misstatement or misdirection of law, and that it enabled the jury to understandingly arrive at a just verdict. Furthermore, it is the rule that "Where an instruction on the measure of damages, though general, is not erroneous in its general scope, its generality does not constitute error, and if the defendant fears such instruction may be misunderstood, he must submit an explanatory or modifying instruction or he will not be heard to complain". Raymond, Missouri Instructions, Sec. 132; Brunk v. Hamilton-Brown Shoe Co., 334 Mo.Sup. 517, 66 S.W.2d 903. Defendant, therefore, having submitted no correct qualifying, supplemental or limiting instruction, cannot be heard to complain of plaintiff's instruction on the measure of damages. Since we regard that instruction as a prop-

er declaration to the jury, it is also our opinion that it had no improper bearing on the jury's verdict.

In the absence of error committed by the trial court against the defendant, materially affecting the merits of the case, it is our duty to affirm the judgment. Civil Rule 83.13(b), V.A.M.R.

Accordingly, the judgment is affirmed.

All concur.

ON MOTION FOR REHEARING

PER CURIAM.

■ In appellant's motion for rehearing or in the alternative for transfer to the Supreme Court, it is contended for the first time that plaintiff's Instruction I (relative to the measure of damages) is erroneous because it places no limitation on the amount plaintiff could recover for loss of rentals and allowed the jury to assess damages in a sum representing the reasonable rental value of the property from the date repairs could have been reasonably completed to the date of the trial. Defendant argues that the instruction should have limited the award to the sum of $500.00—the amount stated in the petition as the total amount of lost rentals up to the date of its filing.

The foregoing assignment comes too late for consideration. No specific objection was made to Instruction No. I for the reasons now urged, either at the trial or in defendant's motion for a new trial, and no point concerning the alleged error was contained in defendant's brief or made in oral argument. For those reasons, we now decline to consider the assignment. The motion otherwise is considered and overruled.