## Fire Association *versus* Rosenthal.

1. Where a policy of fire insurance provides that in case of partial loss the insurers may at their option either pay the damage or repair the loss, an election once made is irrevocable, and fixes the rights and duties of the respective parties to the contract.

2. Such a provision, and an election made under it, must be presumed to have been made in view of the laws and ordinances in force at the date of the policy, or of the election. Therefore, after a partial loss of a frame building, and an election to repair, it is no excuse for failure to complete the repairs, that the building inspectors, acting under a police regulation, prevented the insurers from erecting a frame building, as they could have erected it of brick or other material equally or more costly than wood.

3. Where, in such case, after an election by the insurers to repair, and failure to complete the repairs, the insured himself rebuilt with brick:
   *Held*, that he was entitled to recover the cost, and damages for delay; and the rental value of the property was a proper element in ascertaining the measure of damages.

January 23d, 1885. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. GORDON J., absent.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia County:* Of July Term 1884, No. 16.

This was an action of covenant on a policy of fire insurance by Solomon Rosenthal against the Fire Association of Philadelphia.

There was no dispute as to the facts, which are fully reported in the opinion of this court. In brief, there was a partial loss by the burning of the frame portion of the insured

[Fire Ass'n v. Rosenthal.]

building, and the defendant company elected, under a provision of the policy, to repair and rebuild, but after beginning work the building inspectors forbade the erection of a frame structure. After delay the plaintiff rebuilt with brick, and sued to recover the cost, and damages for delay and consequent loss of rents, &c.

The defendant presented the following points:—

1. That the plaintiff cannot, in any event, recover more than the cost of putting the property in the same condition that it was in before the fire occurred; and if the burnt portion of the house was built of frame or wood, there can be no recovery beyond the value or cost of such frame or wooden structure.

2. That even if the defendants did elect to re-build instead of paying the loss in money, they were relieved from any obligations which might arise from such election, if the building inspectors prohibited them from re-building the house as it was before the fire.

3. If the jury find that a *bona fide* offer was made to repair the loss sustained for the price of $649, and that the repairs or re-building in wood could have been procured for this sum under such offer if there had been no prohibition by the building inspectors—that a payment of such sum by the defendants would be a compliance with their undertaking and a discharge of their liability.

All of which points were refused by the court.

The substance of the charge of the Court, as given in the paper book of plaintiff in error was as follows:—

"At the conclusion of the trial the learned judge said that he would charge the jury that the defendants were liable for the cost of repairing with brick. Also, for rents lost through their failure to carry out their undertaking to repair, and further suggested that if there be no dispute as to the amount of the plaintiff's claim upon that basis that a verdict be taken therefor, which was done with the defendants' approval, subject to their exception to the failure to charge as requested; the defendants also excepting to the instruction to find a verdict for the cost of repairing with brick, and the instruction to find a verdict for loss of rents."

Verdict for plaintiff for $1,411.60, and judgment thereon. The defendant took this writ of error, assigning for error the refusal of their points and the instruction given in the charge.

*E. Coppée Mitchell* (*W. E. Littleton* with him), for the plaintiff in error.

*David A. Gourick*, for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court October 5th, 1885.

This action of covenant was brought upon a perpetual policy of fire insurance, issued by the Fire Association of Philadelphia, 27th August, 1870, to Solomon Rosenthal, "to indemnify the said assured from loss or damage by fire," according to the terms and conditions of the policy, "to the amount of $2000, on a three story brick store and dwelling house, situate on the north side of Spring Garden, west of Eleventh Street, in the City of Philadelphia. A more particular description of the premises was contained in a survey, signed by the assured, and deposited in the defendants' office. The general obligations assumed by the association were to be complied with as expressed in the policy, in the alternative, as follows:

"The said association shall, within thirty days after the proof of such damage, if the loss is not total, proceed with reasonable diligence to put the said buildings into as good a state of repair, as the same was before so injured by the fire . . . . . or shall, within sixty days after such proof, pay for such damages, according to an estimate thereof, to be made by arbitrators mutually chosen."

"Or, in case of a total loss, on this policy, the association shall rebuild the same with convenient speed . . . . . or, pay the amount insured thereon within ninety days; in either of these cases the deposit money shall be retained and the policy cancelled."

The building insured consisted of a three story brick structure, in front, and a two story brick, a three story frame, and another two story brick, in the rear, located in the order named. On the 16th August, 1881, a fire occurred and the frame portion of the building was wholly burned out; the other portions were also more or less injured. Notice of the loss was promptly given, and on 18th August, the association notified the insured that the damages to his building had been estimated at $649, which amount the association was "prepared to pay or proceed to repair." Rosenthal refused to accept this sum, and said they might "go ahead with the repairs." The association, thereupon, instructed their builders, Marriner & Buckingham, to proceed, but after several days work had been done, notice was given to the association and also to the builders, by the building inspectors of the city that, under an ordinance of councils 11th April, 1863, the rebuilding in wood was condemned, and that the erection of a wooden structure was prohibited. In compliance with the notice, the builders at once abandoned the work and it was never afterwards resumed. Mr. Rosenthal himself, however, in February 1882, began, and in April following completed,

[Fire Ass'n v. Rosenthal.]

the repairs, using brick instead of wood, as required by the city ordinance. This suit was brought 15th November, 1881. The declaration contained three counts; the first, averred a partial destruction of the premises insured, by fire, and a failure of the defendants to pay the loss or repair the building; the second, that the defendants had elected to repair but had failed to do so, and the third, that the defendants had offered either to pay $649, or to make the repairs, and that the sum offered having been declined, the defendants thereupon began, but failed to complete the repairs; whereby, the building was for a long time untenantable, and the plaintiff was deprived of his rents, &c.

The plaintiff's claim was for the costs of making the repairs with brick, the cheapest non-combustible substitute for wood, and also for the loss of rents.

The defendants, on the other hand contended, that, in any event, the plaintiffs could not recover more than the cost of putting the property in the same condition it was before the fire occurred, and if the burnt portion of the house was of wood, the recovery could not be beyond the cost of a wooden structure; that if the defendants did elect to rebuild instead of paying the loss, they were relieved from any obligations which might arise from such election, if the building inspectors prohibited them from rebuilding the house as it was before the fire; and, that if the offer of $649, was adequate to restore the property in wood, the payment of that amount would be the proper measure of their liability.

The court refused points to this effect, and instructed the jury, that the defendants were liable for the cost of repair with brick, and also for the rents lost from failure to carry out their undertaking to repair. There was no dispute as to the amount which the plaintiff should recover, under this instruction, and a verdict was taken with the defendants' approval; subject, however, to an exception as to the plaintiff's right to recover upon the basis or according to the measure stated.

The risk was upon the building as a whole, the loss was therefore but a partial one, and the alternative obligation on the part of the association, in the first instance, was within sixty days after proof of loss, to pay the damages incurred, or to proceed with reasonable diligence to put the premises "in as good a state of repair, as the same was in before so injured by the fire." That the association elected to repair, is clearly shown by matters which are undisputed and unequivocal. The defendants' assertion that they were "prepared to pay" the $649 "or proceed to repair;" the plaintiff's refusal to accept that sum; the immediate employment of builders, who

were instructed "to go ahead and make the repairs;" the
delivery of the material upon the ground, and the actual per-
formance of four or five days work upon it are facts admitted,
which, in our judgment, prove this point beyond possible
question.   An election, in such case, is established by proof
of any decisive act, by which the purpose of the party to
make a deliberate choice is clearly manifested: Walton *v.*
Coulson, 9 Pet., 62; Garrett's Appeal, 100 Penn. St., 601.

It is also a well settled rule of law, that when an election
is open between alternative conditions of a contract, the alter-
native chosen must be adhered to; an election once made is
irrevocable: Leake, 2 ed., 679; Baney *v.* Killmer, 1 Barr, 35;
Beals *v.* Ins. Co., 36 N. Y. 522; Heilman *v.* Ins. Company, 75
Id., 7; Benj. on Sales, § 359; Whar. on Cont., § 623, and cases
there cited.   When an insurer elects to repair under a clause
in the policy giving that right, the conditions of the contract
which before were alternate, are thereby resolved into an
absolute agreement.   It must be assumed that the election
was made in view of all such matters, as in the law or other-
wise may affect the transaction, and the principles of law
incident to the alternative chosen are alone applicable.   The
amount of the loss ceases to be a question; there can be no
inquiry as to that.   The original contract, by virtue of the
election, is a contract to rebuild, and the rights and responsi-
bilities of the parties are to be measured accordingly.   There
can be no after recovery of the original loss; the insurer in
case of default, is liable only for damages upon the footing of
a contract to rebuild or repair, which may be more or less
than the amount insured.   The rule which produces this
result is applicable to contracts in general; we have not found
any case in this court, in which it has been applied to the con-
tract of insurance, but in the courts of some of the states the
rule has been very distinctly declared and thus applied.   In
Ryder *v.* Commonwealth Insurance Co., 52 Barb. (N. Y.,)
447, it was held, that in case of an election to repair, if the
repairs are defective, the insurers must make the defect good.
In Parker *v.* Eagle Insurance Co., 9 Gray (Mass.,) 152, it was
held, that if the assurer commences to repair, but does not
complete, the assured is entitled to recover the difference
between the value of the repairs made, and what the value
would have been if they had been fully completed.   See also
Times Fire Ins. Co. *v.* Hawke, 5 H. & N., 935; Brinley *v.* Na-
tional Insurance Co., 11 Met. (Mass.,) 195.   In Morrell *v.*
Irving Fire Insurance Co., 33 N. Y., 429, a building was
insured against fire to the amount of $3000; the policy
contained the following clause:—"In case of loss or dam-
age to the property insured, it shall be optional with the

company to replace the article lost or damaged with others of the same kind or quality, and to rebuild or repair the building or buildings within a reasonable time, giving notice of their intention to do so within twenty days after having received the preliminary proofs of loss," &c. The building was destroyed by fire, and the company gave notice that they were prepared to rebuild, and did undertake to do so; the insured alleged that there had not been a substantial compliance with the stipulation to rebuild, and brought an action on the policy to recover the amount of the original loss; it was held, that after the election and notice, a contract to rebuild existed between the parties, of such a kind that the contractor had received the entire consideration in advance; that if this contract was not fulfilled by the insurer, he was liable for the damages sustained by the non-fulfilment of the contract, which may be more or less than the amount insured, and that the action, consequently, should have been brought to recover damages for breach of contract. See also, Wynkoop v. Ins. Co., 91 N. Y., 478.

It is contended, however, that the ordinance of 1863, and the action of the building inspectors in pursuance thereof, prohibited the exact performance of the contract, that the replacement or repair with wood was unlawful, and rendered impossible. But an agreement to put in the same state of repair, does not necessarily imply the employment of the same, perhaps not even of similar, materials; the same state of repair may·be effected by other materials of equal or greater value, suitable and appropriate for the purpose, in view of the location, uses, architectural style, or appearance of the property. The defendants' election imposed no particular obligation to build with wood, if for any reason wood could not be employed; the contract therefore involved no impossibility, it did involve a greater expense, perhaps, than was anticipated, but the plaintiff was in no way responsible for that; and the existence of a police regulation, prohibiting the use of wood, of which they may have had no knowledge, cannot any more relieve them from the obligation of their contract, than would the rise of prices of materials in the market. They agreed to put the premises in repair, and they were bound to comply with their contract, using such materials as were suitable for the purpose and were allowed by law. The contract of insurance, and the election under it, were both made after the adoption of the city ordinance. The parties of course contracted with reference to the law, as it existed at the time, and consented to be bound by it; whether the city authorities would permit the building to be repaired in wood was, therefore a risk which the insurers assumed, at the issuing of

the policy, and which they re-assumed at the making of the election: Brady v. N. W. Ins. Co., 11 Mich., 425. When the Fire Association made their election, in the mode indicated in their contract, the contract became precisely what they elected to make it, and the rights of the parties were thereby fixed. They cannot recede from their election without the consent of Rosenthal, whatever may be the consequences as to expense.

In Brown v. Royal Insurance Co., 1 Ellis & Ellis, 853, the defendants executed a policy insuring plaintiff's premises against fire; reserving to themselves "the right of reinstatement in preference to the payment of claims." The premises were damaged by fire, and defendants elected to reinstate them, but did not do so. To an action for not paying, compensating, or reinstating, defendants pleaded that they elected to reinstate, and were proceeding to do so when the Commissioners of Sewers, under The Metropolitan Building Act, 1885, caused the premises to be taken down, as being a structure in a dangerous condition; and that such dangerous condition was not caused by the damage from the fire. On demurrer, held by Lord CAMPBELL, C. J., CROMPTON, J., and HILL, J., (dissentiente ERLE, J.,) that the plea was bad, inasmuch as the contract to reinstate being lawful, at and ever since the time of contracting, the alleged impossibility of its performance was no defence, and defendants were bound, if they could not perform it, to pay damages for not doing so. This case is cited with approval in Wood on Insurance, 262, and in May on Insurance, 432, and in their discussion of the subject the same general view of the law is by both authors adopted. In some of the states a different, or somewhat modified rule has been asserted, but an examination will show that the cases were controlled either by the express provisions of the company's charter or of the contract itself.

If, after having made his election, the insurer fails to proceed with the work, with reasonable dispatch, liability attaches for damages resulting from such unreasonable delay: Wood on Ins., 256; Haskins v. Hamilton Mut. Ins. Co., 5 Gray (Mass.,) 432. The rental value of the property was evidence to aid in the computation. The whole house was shown to have been untenantable from the time of the fire, until the plaintiff himself made the repairs. If the association fairly undertook the work, delivered the material &c., performed some labor upon it, and afterwards abandoned it, some compensation was due to the assured for the delay which resulted; and whilst rents, as such, were perhaps not recoverable, the rental value of the property was a proper element in the assessment: Brown v. Foster, 51 Penn. St., 165; Rogers v.

[Forest v. Nelson.]

Bemus, 69 Id., 432. The extent of the damages arising from the delay is not a question in the case as the verdict was taken with the defendants' approval as to the amount.

Judgment affirmed.