ZINDELL and others, Plaintiffs and Respondents, vs. CENTRAL MUTUAL INSURANCE COMPANY OF CHICAGO and another, Defendants and Appellants : BUILDERS & MANUFACTURERS MUTUAL CASUALTY COMPANY and another, Defendants and Respondents.

*September 17—October 13, 1936.*

For the defendants-appellants the cause was submitted on the brief of *Rouiller, Dougherty, Arnold & Kivett* of Milwaukee.

For the plaintiffs-respondents there was a brief by *Godfrey & Arnold* of Elkhorn, and oral argument by *Alfred L. Godfrey.*

For the defendants-respondents there was a brief by *Moran & O'Brien* of Delavan, and oral argument by *J. Arthur Moran* and *J. N. O'Brien.*

FRITZ, J.   The plaintiffs in this action seek to recover for damage to a garage located at the intersection of Highways Nos. 14 and 15, as the result of a collision between a truck which was owned by the defendant Arnold, and was eastbound on No. 15, and a truck which was owned by the defendant Britton Motor Service, Inc. (hereinafter referred to as Britton), and was northbound on No. 14.   Each outfit consisted of a heavy four-wheel tractor hauling a two-wheel trailer.   The collision occurred in the intersection on March 26, 1935, at 2:15 a. m.   Both highways were concreted to a width of thirty-five feet.   Traffic was controlled by automatic electric signal lights at the corners, with trip bars in the pavement, which were depressed upon wheels passing over them.   The trip bar for the eastbound vehicles on No. 15 was 166.2 feet west of the center of the intersection, and the bar for northbound vehicles on No. 14 was 204.5 feet south

of that center. If the red light was against an approaching vehicle, crossing a trip bar when there had been no traffic on the intersecting road for a period of five seconds, then upon that vehicle crossing the bar that red light remained so for two seconds, and then turned to green; and the green light on the intersecting road turned to amber for two seconds, and then to red. If, immediately after the vehicle approaching against the red light passed over the trip bar, another vehicle approaching on the intersecting street passed over the bar on that street, the light immediately flashed amber on the street that had the green light, and remained amber for the two-second amber period and an additional two-second period; and the red light remained on the opposite street for the four-second interval, and then turned to green and remained so for a period of seven seconds in favor of the driver who first passed over the bar.

The jury found, in answer to questions submitted for a special verdict, that the damage to the garage was caused by the negligence of the driver of Britton's truck in respect to lookout, management, and control; and that, on the other hand, Arnold's driver was not negligent in respect to lookout, management, or control. The appellants contend that the court erred in approving the jury's finding that Arnold's driver was not negligent.

The only person called to testify as a witness, who was at the intersection at the time of the collision and then observed what occurred, was Virgil Arnold, the driver of the Arnold truck. The Britton truck driver was killed in the collision. There was also a helper on each truck, but neither of them was awake at the time of the collision. Arnold's testimony warranted the jury in fairly considering the following facts established: As Arnold approached the intersection, driving eastward, he saw that the traffic light was red and, therefore, took his foot off the accelerator and slowed down to fifteen miles per hour as his truck rolled down an incline and over

the trip bar. When he was ninety feet from the center of the intersection, that red light changed to green. When he was sixty feet from the center of the intersection, or twenty-five feet before he entered it, he looked to the south and saw the headlights on Britton's truck about one hundred seventy-five feet south of the intersection. He could not estimate its speed with certainty, and it appeared coming along with no indication of stopping. Because the green light was in his favor, he figured that he had plenty of time to go on across. However, when he was about nine feet into the intersection or that distance west of the center thereof, he saw that the Britton truck was continuing and entering the intersection at a rate which told him that it was not intended to bring it to a stop, and that if he then stopped there would be a head-on collision. To avoid that he desperately attempted to swerve to his left, but when he was nine feet east of the center of the intersection, the Britton truck, which was still approaching. head on, struck the middle of the right side of the Arnold tractor. The front part thereof crashed into plaintiffs' garage, and it came to a stop with its cab wedged into the wall. Skid marks made by the Britton truck commenced three feet south of the center of the intersection and extended nine feet to the east.

The only testimony materially in conflict with that of Arnold is testimony by the driver and a helper of another Britton truck, who claimed that, as they were following four hundred feet behind the Britton truck which was in the collision, they saw that the signal light was green for northbound traffic when that truck entered the intersection, and that while it was doing so the Arnold truck dashed in ahead of it. However, the testimony of those two witnesses, and particularly their statement that the second Britton truck was following at a distance of but four hundred feet, was rendered decidedly incredible by the testimony of three disinterested witnesses, who arrived at the intersection shortly

after the crash. However, notwithstanding that conflict in testimony, the record well warranted the jury in believing that Arnold's driver, upon crossing the trip bar at fifteen miles per hour, had the green light turn in his favor when he was ninety feet from the center of the intersection; that when he was sixty feet from that point he saw the Britton truck headlights one hundred seventy-five feet south of the intersection, and, in the exercise of ordinary care, believed that he had time to cross safely because he had that light in his favor; that he did not then realize and, in the exercise of ordinary care, ought not to have realized, that the Britton truck would, in violation of secs. 85.12 (3) and 85.75, Stats., continue, without stopping or even slowing down, in utter disregard of the fact that the signal lights had turned against northbound traffic, and were in favor of east and westbound vehicles; and that it was not until Arnold was about nine feet into the intersection, and only nine feet west of the center thereof, that it became apparent to him, in the exercise of ordinary care, that the Britton truck, instead of stopping or yielding the right of way to Arnold, was then also entering the intersection. In as much as the traffic was controlled by signal lights, and Arnold, approaching at a lawful speed, had entered the intersection with the lights in his favor, before the Britton truck had reached the intersection, Arnold had the right of way and was entitled to proceed in accordance with the signals and to assume, in the absence of some indication that the driver of the Britton truck was about to interfere with Arnold's right of way, that the latter would not continue to proceed in violation of secs. 85.12 (3) and 85.75, Stats. If Arnold was exercising ordinary care, he was entitled to rely upon the favorable signal light, until it should have become apparent to him, in time to enable him to avoid the collision by the exercise of ordinary care, that the Britton truck driver was going to proceed in disregard of the lights and the rules of the road. *Baumann v. Eva-Caroline Home Laundry,* 213 Wis. 78, 250 N. W. 773; *Teas v. Eisenlord,* 215 Wis. 455,

253 N. W. 795. Consequently, the issues as to Arnold's negligence in the respects stated above were for the jury, and its findings thereon, which have been approved by the court, cannot be set aside on appeal. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741.

Appellants further contend that the court erred in sustaining the jury's assessment of damages in several respects, and particularly in fixing the damage to the garage at $3,251. That award was evidently based on the cost of rebuilding the ruined brick walls with the walls twelve inches instead of eight inches wide as they were before the impact. That increased width was required because of regulations prescribed by the state industrial commission since the erection of the original walls. Those regulations had to be complied with whenever the cost of repairs exceeded fifty per cent of the cost of any complete part of the building. The expert witnesses testified that compliance with that regulation would cause an increase in the cost of rebuilding which they estimated at from $500 to $950. On the trial, as well as on this appeal, the appellants contended that the amount to be allowed as damages for the injury to the building was the cost of replacement less an allowance for depreciation from use or age. On the other hand, the plaintiffs contended that, in order to enable them to establish their damage, the court should receive evidence as to the amount that it would cost to repair the building, and also as to the amount of its diminished value as the result of the collision; and should then adopt as the measure of damages the lesser of these two amounts. Under plaintiffs' contention the procedure and measure of damages would have been in substantial compliance with the rule approved in *Hickman v. Wellauer,* 169 Wis. 18, 171 N. W. 635; and *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 448.

However, when plaintiffs sought to prove the diminished value by proving the value of the building as it was before and after the collision, objections interposed by the defend-

ants were sustained, and the court ruled that "the rule of damages in this case is the cost of restoring the building to the condition it was before the accident, either by repairing, if that is allowed, and then if not by rebuilding under the code." As the result of sustaining the appellants' objections, the plaintiffs were prevented from introducing proof to establish the diminished value of the building, in accordance with the rule recognized in the *Hickman* and *Bunker Cases, supra.* The court's ruling in that respect was erroneous, but as that ruling was induced by the appellants' objections, they cannot complain now of the court's action, and the absence of any proof in the record as to the amount of the diminution in the value of the building. *Nowaczyk v. Marathon County,* 205 Wis. 536, 238 N. W. 383; *Sherwood v. Hulett,* 134 Wis. 561, 114 N. W. 1111; *Evans v. Enloe,* 64 Wis. 671, 26 N. W. 170. As the result of that erroneous ruling, the only proof admitted in relation to the amount of plaintiffs' damages was as to the cost of restoring the building; and in that respect the court instructed the jury that plaintiffs' damages could include the cost of restoring the building by means of twelve-inch walls, if the state building code did not permit the restoration thereof by the use of eight-inch walls. No precedent or authority, which is directly in point, has been cited or found as to the liability of a tort-feasor, whose negligence caused injury to a building, for an increased cost in reconstruction due to building regulations, which does not permit the restoration thereof with the same materials used in the erection of the building originally. The question as to the damages recoverable under such circumstances was involved in *Jesel v. Benas,* 177 Mo. App. 708, 160 S. W. 528, but in that case there was proof that the cost would be no greater for a thirteen-inch than for a nine-inch wall. On the other hand, in actions to recover on insurance policies for losses by fire, it has been held that, if the insurer elects to rebuild, it is liable for such an increase in cost. *Brady v.*

*Northwestern Ins. Co.* 11 Mich. 425 ; *Hamburg-Bremen Fire Ins. Co. v. Garlington,* 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613 ; *Fire Asso. v. Rosenthal,* 108 Pa. 474, 1 Atl. 303, 306 ; *Penna. Co., etc., v. Contributionship,* 201 Pa. 497, 51 Atl. 351, 352 ; *Brown v. The Royal Ins. Co.* 1 El. & El. 856.

In the case at bar the plaintiffs are certainly entitled to have the garage restored so that it can be used for all purposes for which it was being lawfully used at the time of the collision. They are in no way responsible for an increase in the cost of reconstruction due to the lawful regulations which do not permit rebuilding with but eight-inch walls. But for the causal negligence of the Britton truck driver, those regulations would not have occasioned any expense to the plaintiffs or interfered with their continued use of the building as theretofore constructed. If the increase in the cost of repairs were due to a rise in the market price of materials required to restore the walls with the same materials as were originally used, there would seem to be no reason for not holding that the tort-feasor's liability includes that increase. In either event, his obligation, in so far as the cost of reconstruction is concerned, should be measured by the cost thereof under the conditions existing or lawfully imposed at the time his negligence caused the injury. Consequently, the owner of a damaged building is ordinarily entitled to recover the entire cost of restoring its former condition so that it can be used again for the same purposes, provided that, if that cost exceeds the diminution in the value of the building as the result of the injury, then the recovery must be limited to the amount of such diminution. However, as on the trial the appellants induced the court to exclude proof intended to establish such diminution in value, they are not now entitled to have their liability limited to that amount. Although the cost which the owner seeks to recover is for repairs which put the building in better condition than it was before the injury, that cost will be the basis on which to assess the damages in the ab-

sence of proof showing the amount of the increase in value due to that better condition. *Mueller R. E. & I. Co. v. Cohen,* 158 Wis. 461, 465, 149 N. W. 154.

Appellants also contend that the court erred in approving amounts assessed by the jury for damages sustained in several respects due to delay in reconstructing the building because of the problems that arose on account of the industrial commission's building regulations, and also the plaintiffs' inability to finance the reconstruction at the increase in cost occasioned by those regulations. That most of the delay was the direct and unavoidable consequence of the extent of the injury to plaintiffs' building was established in part by evidence in relation to conferences, negotiations, and correspondence between the plaintiffs and the industrial commission, and the latter's rules and orders; and also in relation to plaintiffs' financial condition. Considerable of that evidence was received over the appellants' objections, and they contend that the admission thereof constituted prejudicial error. Those contentions cannot be sustained. The evidence in relation to those matters was material on the issues as to whether the difficulties and delay encountered were the result of the nature and extent of the injury to the building, and whether they were unavoidable so far as the plaintiffs were concerned. Those issues were directly involved in determining whether, because of that delay, the plaintiffs were entitled to recover the various items of damage they claim to have sustained in the several respects referred to above; and the evidence admitted over appellants' objections in relation to those issues and matters fully warranted finding the amounts assessed by the jury as the damages sustained in those respects by the plaintiffs as the result of the collision. There is no prejudicial error in any respect, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.