LaChance, Respondent, vs. Stuart and others, Defendants: Sherbert and another, Appellants.

*October 11, 1939—January 16, 1940.*

For the appellants there were briefs by *W. E. Atwell* and *Fisher, Cashin & Reinholdt,* all of Stevens Point, and oral argument by *Mr. Atwell* and *Mr. W. E. Fisher.*

For the respondent there were briefs by *Anderson & Reinardy,* attorneys, and *A. L. Smongeski* of counsel, all of Stevens Point, and oral argument by *Mr. Kenneth E. Anderson* and *Mr. Smongeski.*

The following opinion was filed November 7, 1939:

WICKHEM, J. The only contentions made upon this appeal either by defendant or plaintiff have to do with the sufficiency of the evidence to sustain the jury's findings. In view of this, it becomes necessary to state the facts in some detail.

The accident occurred on January 19, 1938, at the intersection of Reserve and Ellis streets in the city of Stevens Point. Reserve street runs north and south; Ellis street runs east and west. The Stuart car, in which plaintiff was riding as a guest, was proceeding north on Reserve street, and the pick-up truck driven by Sherbert was proceeding west on Ellis street. Reserve street is eighteen feet wide between curbs south of Ellis street and twenty feet wide north of Ellis street. There is a jog in Ellis street at this intersection of nine and one-half feet, so that west of Reserve street Ellis street is nine and one-half feet further north than is Ellis street east of Reserve street. The street, however, does not vary in width, being twenty-four feet wide between curbs from both sides of Reserve street. The cars came into collision at the intersection, the left front portion of the Sherbert truck striking the right side of the Stuart car near the right front door. As the collision became imminent, the

Sherbert truck attempted to turn to the north and the Stuart car kept largely to its course, and after the collision struck an electric light post on the northwest corner of the intersection and came to a rest some fifty feet beyond.

Defendants contend that there is no evidence to sustain the jury's finding of a negligent lookout on the part of Sherbert. Plaintiff contends that the evidence not only supports this finding but clearly indicates that Sherbert was negligent with respect to speed and failure to yield the right of way. There were five eyewitnesses to the accident, of whom four testified. These were Stuart, Sherbert, one Yach, who was riding with Sherbert, and Freida Mortenson, who saw the accident from her home. Plaintiff did not testify. Sherbert and Yach testified that Sherbert's speed was from fifteen to eighteen miles an hour. Mrs. Mortenson did not testify as to the speed of the Sherbert car. Sherbert, Yach, and Mrs. Mortenson all put the speed of the Stuart car at thirty to thirty-five miles an hour. They also testified that the Stuart car did not slow down at the intersection. There was evidence that Sherbert applied his brakes promptly when he saw the Stuart car, and turned his car to the right as soon as he had passed the corner. There was evidence that the impact took place approximately eighteen feet north of the south curb line of Ellis street. Either at the time when the brakes were applied on the Sherbert car or the collision took place, the back end of the Sherbert car swung to the left in a half-circle, and the car came to rest facing northeast, a little northeast of the center of the intersection. The Stuart car stopped some fifty feet north and west of the intersection after striking the light pole, as heretofore stated. The street was covered with packed snow and was somewhat slippery. Sherbert claims that as he approached the intersection he first looked south for approaching traffic and saw none; that he then looked north to see if any car was approaching from his right; that he again looked south when he was about twelve

feet east of the east curb of Reserve street and saw the Stuart car approaching at about twice his speed.

Defendants' contention is that this evidence constitutes all the evidence there is as to what Sherbert did with reference to lookout, and that it is not a sufficient basis for a finding of negligent lookout. In approaching this problem, it may be useful first to call attention to the uncontroverted fact that due to the presence of a house on the southeast corner of the intersection, the view of a driver approaching from either the south or east was obstructed. The driver of a westbound car approaching the intersection and seventy-five feet therefrom could see approximately seventy-five feet down Reserve street south of the intersection. At sixty feet his view increased, and he could see approximately ninety feet to the south on Reserve street. At fifty feet the view was well over one hundred feet. There is no evidence in the record as to the distance Sherbert was from the intersection when he took his first observation to the south. It is clear enough that if the observation was taken no nearer to the intersection than seventy-five feet, he could not be assured that his observation would be effective to discover all cars approaching on Reserve street at a proper and lawful rate of speed. *Thieme v. Weyker*, 205 Wis. 578, 238 N. W. 389. The reason for this is that according to his claim, and the view accepted by the jury, he was driving at a speed of from fifteen to eighteen miles an hour, and it was entirely possible that a car out of his range of vision but nevertheless traveling at a proper and lawful speed was moving toward the intersection, and due to its somewhat greater speed, would be in competition for the intersection with him. At sixty feet, however, he could see cars approaching the intersection at the rate of from twenty-two to twenty-seven miles per hour. In other words, if the observation was made at this point, he could see not only all cars proceeding toward the intersection at a proper and lawful rate of speed, but cars traveling somewhat in excess of that speed. However, at this distance

he could not see the Stuart car, which under the evidence accepted by the jury was proceeding at from thirty to thirty-five miles an hour. At fifty feet he could see the Stuart car. There appears to be no doubt on that score. Hence, the point at which he looked was a matter of great materiality. An observation at seventy-five feet would be premature and ineffective. An observation at fifty feet would have been timely, but would have disclosed the presence of the Stuart car coming at a rate of speed which made it evident that it could not or would not yield the right of way. One at sixty feet would be sufficient and Sherbert would have been entitled to rely upon his right of way and the fact that no car proceeding at a proper rate of speed could cause him trouble. *Olk v. Marquardt,* 203 Wis. 479, 234 N. W. 723.

Sherbert did not testify as to where the observation was, and no attempt was made to fix the point either in the direct or the cross-examination. Under these circumstances, as in all cases where there is an absence of testimony applicable to the issue, the assignment of the burden of proof must decide the issue itself. The burden of proof was upon plaintiff to persuade the jury that Sherbert maintained a negligent lookout. In the absence of any proof whatever, this issue would go against plaintiff. Plaintiff produced no evidence whatever applicable to the issue, and could only argue so far as the record made by him was concerned that the happening of the accident furnished a reasonable inference that Sherbert was guilty of negligent lookout. This, of course, was not enough to take the case to the jury, and to raise a jury issue plaintiff must rely upon whatever conclusions can be drawn from Sherbert's testimony. This testimony was simply to the effect that he looked to the south and then to the north and then when within twelve or fifteen feet from the corner looked again to the south. What is there in this testimony from which the jury could conclude that there was a negligent lookout? For the jury to disbelieve Sherbert's evidence concerning lookout is to create a complete absence of testi-

mony applicable to the issue. For the jury to assume without any evidence on the point that Sherbert's first observation was insufficient to disclose to him the presence of cars approaching the intersection at an ordinary rate of speed would be pure conjecture. So likewise would be the assumption that his first look to the south came when he was fifty feet or nearer to the intersection, and that he then failed to see the Stuart car which was plainly visible from that point. Therefore, it appears to us that there was no basis for a conclusion that Sherbert did not maintain a sufficient or effective lookout, unless there be something to the contention of plaintiff that had Sherbert looked straight ahead, the vision to the side would have been sufficient to disclose the presence of the Stuart car at a point much farther from the intersection than that at which he evidently discovered its presence on the highway.

We think there is nothing to this contention. The distinction between vision and focus may and doubtless does have a foundation in fact. It was perfectly proper, however, for Sherbert to focus momentarily upon the portion of Reserve street north of Ellis street where vehicles approaching the intersection would have the right of way over him. It is clear enough that such a view would use up at least a second of time and about twenty to twenty-two feet of the distance between him and the intersection. This would furnish an adequate excuse for not discovering the fast-moving Stuart car at an earlier stage, provided Sherbert had previously taken a view to the south which would have disclosed any vehicle moving toward the intersection from the south at a proper rate of speed. He said that he took an observation, and it was for the plaintiff to establish in some way that this observation was negligently ineffective. It appears to us that there is a failure of proof here with respect to negligent lookout for the reason that the record does not offer support to the conclusions, (1) that Sherbert did not take a first look to

the south at all; or (2) that he did not take this view at a point where he could see enough of the intersection to discover vehicles approaching the intersection at a lawful rate of speed from the south; or (3) that he made an observation at the point from which the Stuart car was visible and failed to see it.

This conclusion requires us to examine the merits of plaintiff's motion to review. Plaintiff contends that the state of the record is such as to require that the answers of the jury exonerating Sherbert in respect of speed and failure to yield the right of way to the Stuart car be changed from "no" to "yes." The contentions of plaintiff are interdependent, it being asserted that by proceeding at an unlawful rate of speed as he approached the intersection, Sherbert forfeited the statutory right of way over the Stuart car approaching from his left. Plaintiff's principal contention is based on sec. 85.40 (4), Stats., which reads as follows:

"In traversing intersections where the operator does not have a clear view of approaching traffic on the intersecting highway or highways, the speed of such vehicle shall not be greater than that which will permit the operator to stop within one half of the distance within which he is able to see approaching traffic."

The intersection was partially obstructed and, as heretofore noted, at a point seventy-five feet east of the intersection Sherbert could see only seventy-five feet to the south. Plaintiff's argument is that under those circumstances, he was required at least up to a point seventy-five feet from the intersection to maintain a rate of speed that would enable him to stop his truck within a distance of thirty-seven and one-half feet. From that point on, his view was constantly broadening, and the statute could have no particular application to this case since after traversing the next twenty-five feet the intersection was virtually unobstructed. The difficulty with plaintiff's contention is that the evidence as to the speed at

which Sherbert was going was between fifteen to eighteen miles an hour, and there is no evidence in the record to indicate that he could not stop his truck within thirty-seven and one-half feet at this speed.

Plaintiff's real contention is that the physical facts demonstrate that Sherbert was going much in excess of the speed found by the jury, and that in fact he must have been traveling at least twice as fast as the Stuart car. Without going into too great detail, plaintiff's contention is based on the estimate, (1) that Sherbert traveled a distance of thirty-three feet nine inches from the point at which he set his brakes to the point of collision; (2) that on impact the Sherbert truck shoved the Stuart car twenty feet against an electric light post, and that even after striking this post, the Stuart car swung toward the northwest and proceeded for a distance of fifty feet into a snowbank. The distances thus estimated add up to one hundred feet and demonstrate according to plaintiff's contention that Sherbert could not stop his car within one hundred feet, and that consequently he was driving at a much higher rate of speed than the evidence accepted by the jury tends to show. In this contention plaintiff assumes the extremely difficult burden of attempting to demonstrate that the evidence of witnesses that Sherbert was approaching the intersection at a proper and lawful speed is so contrary to the physical facts as to be incredible as a matter of law. We conclude that the burden has not been successfully met. In the first place, there is evidence from which the jury could have concluded that the distance between the point at which the brakes were applied on the Sherbert car and the point of impact was materially less than that claimed by plaintiff, and that the speed of the Sherbert car at the point of impact had been reduced to about five miles per hour. In the second place, the evidence does not require the conclusion that the Sherbert car shoved the Stuart car a distance of twenty feet into the light post, and thereafter fifty

feet farther into a snowbank. The Stuart car was proceeding at a high rate of speed according to evidence believed by the jury. Its momentum must have been a substantial and may have been the sole cause of its final position after the impact. It was plaintiff's burden to demonstrate so conclusively that the force which accounted for the movements of the Stuart car was imparted by Sherbert's car that oral testimony of a proper rate of speed on the part of Sherbert would raise no issue. Plaintiff entirely fails in this respect. These conclusions determine plaintiff's contentions as to the right of way adversely to him. There is believable evidence that Sherbert approached the intersection at a moderate rate of speed, and that the two cars arrived at the intersection at approximately the same time. There is no contention that Sherbert attempted to claim the right of way even if under the circumstances he should have yielded it. Improper management or control, excessive speed, or some such other negligent act would have to be relied on as the cause of any failure on Sherbert's part to yield to the Stuart car. *Levner v. Northland-Greyhound Lines,* 231 Wis. 554, 286 N. W. 68. None of these are in the case in such a way as to deprive the jury's verdict of its finality.

From the foregoing it follows that the judgment must be reversed as to the appealing defendants Sherbert and the Casualty Company.

*By the Court.*—Judgment reversed as to defendants George F. Sherbert and Hardware Mutual Casualty Company, and cause remanded with directions to dismiss plaintiff's complaint as to these defendants.

FRITZ, J., dissents.

A motion for a rehearing was denied, with $25 costs, on January 16, 1940.