WILSON, Administratrix, Plaintiff and Respondent, vs. KOCH, Defendant and Respondent : SCHMIDT and others, Appellants.

*November 11—December 8, 1942.*

*L. E. Vaudreuil* of Kenosha, for the appellants.

For the respondent Mabel Wilson there was a brief by *Nohl, Petrie & Blume,* attorneys, and *Gold & McCann* of counsel, all of Milwaukee, and oral argument by *Henry Blume* and *Ray T. McCann.*

For the respondent Henry C. Koch there was a brief by *Thompson, Myers & Helm* and *Wilbershide & Baumblatt,* all of Racine, and oral argument by *Samuel P. Myers.*

FOWLER, J.    The only question at issue on the appeal is whether the jury's finding that the defendant Schmidt was negligent as to lookout is supported by the evidence.    The

trial judge was of opinion that the finding was sustained. He based his conclusion on the rule that "the right of a driver to proceed on a green light is not absolute." The rule is as stated. Two cases of this court are cited by him as making the rule stated applicable to the instant case. These cases are *Teas v. Eisenlord,* 215 Wis. 455, 253 N. W. 795, and *Meyer v. Neidhoefer & Co.* 213 Wis. 389, 251 N. W. 237. We consider that the facts involved in these cases clearly distinguish them from the instant case, and that the rule stated does not apply under the undisputed facts here involved. It is true that in the *Teas Case, supra,* which involved a collision at the instant intersection, the lights were in favor of the driver of an automobile when he started into an intersection and that the jury found him guilty of negligence as to lookout. The statement of facts as to the driver's conduct is very meager in the opinion, but the printed case on file shows that the driver entered the intersection at twenty-five miles per hour with the light in his favor, and that when he passed the light he saw the colliding car when it was about fifteen feet away, and that was the first time he saw it, and it was then within the intersection, and there was nothing in his way to prevent his seeing it. This presents a very different picture from the instant one, where Schmidt was stopped in obedience to a light, and before starting when the light changed in his favor looked both ways, and saw that the traffic on the intersecting road within reasonable distance was either stopped or stopping, and also saw the colliding car coming a block away. The facts in the *Meyer Case, supra,* as appears from the opinion, are so entirely different as to present no similarity to the instant case.

In the instant case it is plain from undisputed evidence that Schmidt used due care in every respect before he entered the intersection. He was therefore "entitled to rely upon the favorable signal light, until it should have become apparent to him, in time to enable him to avoid the collision by the

exercise of ordinary care, that . . . [Koch] was going to proceed in disregard of the lights." *Zindell v. Central Mut. Ins. Co.* 222 Wis. 575, 580, 269 N. W. 327. As said in *Baumann v. Eva-Caroline Home Laundry,* 213 Wis. 78, 82, 250 N. W. 773:

"In view of the fact, however, that traffic at this crossing was controlled by lights, and that . . . [Schmidt] entered the intersection with the lights in his favor, he would not have the same obligation to make extended observation [extend his observation after having once made a thorough one] of the highway as would be the case if the traffic was not controlled by lights."

And as said in *Raabe v. Brzoskowski,* 204 Wis. 319, 321, 236 N. W. 133:

". . . [Schmidt] rightfully entered the street. In doing so . . . [he] had a right to assume that vehicles proceeding . . . [on Highway 41] would give traffic properly . . . [on Highway 43] an opportunity to clear." See also *LaChance v. Stuart,* 233 Wis. 246, 251, 288 N. W. 262.

There is in this case no evidence whatever that Schmidt did not make a proper lookout before proceeding into the intersection. He testified that he did, and there is nothing in the testimony or in the circumstances to indicate that he did not or to warrant disbelief of his statement in that respect. Having done this, and it appearing that all traffic on Highway 41 was either stopped or stopping in obedience to the traffic light except Koch, who would presumably stop or so slacken his speed as to give him (Schmidt) time to clear the intersection, we perceive nothing whatever to support the finding of the jury that he was negligent as to lookout. It is true that one bit of Schmidt's testimony, if detached from its context and referred to the time when Schmidt was making his lookout prior to entering Highway 41, would lend support to a finding of negligence for not making further lookout before entering the south traffic lane. The statement was,

"When I saw the Buick [Koch's] car I was wondering whether he was going to make the stop or not." But this refers to when he saw the Buick when he "was in the middle of the southbound lane" not to his lookout before entering Highway 41. It is also true that on adverse examination on the trial Schmidt first said that the first time he saw Koch's car was when he (Schmidt) had entered the south lane of Highway 41. But he also said in immediate connection that he could see to the north half or three-quarters of a mile when he looked before entering Highway 41, and that he may then have seen the Koch car "way up the road." It also appears that in his testimony, at the coroner's inquest on the body of the deceased, Schmidt said he thought there was a car south of the Buick. However Schmidt's testimony be taken as to where the Buick was when he first saw it, it is apparent from his testimony, and from Koch's, and from that of the driver of the southbound car that stopped in obedience to the traffic lights that Koch had ample time to stop before reaching the intersection, and that there was then no reason to suspect that any approaching traffic would interfere with Schmidt's crossing Highway 41. In this situation, in absence of any testimony as to any failure on his part to make a proper lookout before entering Highway 41 on invitation of the traffic light, we consider that the jury's finding of negligence as to Schmidt's lookout is contrary to all the undisputed evidence, and the case must be reversed with directions to change the answer of the verdict in that respect and enter judgment dismissing the complaint as to the appealing defendants.

*By the Court.*—The judgment of the circuit court is reversed, with directions to correct the verdict and enter judgment of dismissal as indicated in the opinion.