BATTICE, Plaintiff and Respondent, vs. MICHAELIS and another, Defendants and Respondents: FRIEDE and another, Defendants and Appellants.

FRIEDE, Appellant, vs. MICHAELIS and another, Respondents.

McCARTHY, Plaintiff and Respondent, vs. FRIEDE and another, Defendants and Appellants: MICHAELIS and another, Defendants and Respondents.

*October 10—November 15, 1949.*

572

573

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *Robert J. Sutherland.*

For the respondent Erie Lee Battice there was a brief by *Curkeet & Curkeet* of Madison, and oral argument by *William R. Curkeet, Jr.,* and *William R. Curkeet, Sr.*

For the respondents Ernest J. Michaelis and State Farm Mutual Automobile Insurance Company there was a brief by *Roberts, Roe & Boardman,* attorneys, and *Walter M. Bjork* of counsel, all of Madison, and oral argument by *Glenn D. Roberts.*

*Edward J. Owens* of Madison, for the respondent Otto Mc-Carthy.

HUGHES, J. Appellant Friede contends that Michaelis was negligent as a matter of law with respect to both speed and lookout.

The southwest corner of the intersection, which was between the two vehicles as they approached each other, is occupied by a building which makes it a so-called "blind corner."

Michaelis testified that as he approached the intersection he observed the traffic light on the northeast corner and that it was green for traffic on Regent street; that he continued to observe this light, and that it remained green until he was into the intersection and, in fact, until he was struck by the truck driven by Friede.

Counsel for appellant contends that it is the law that a driver entering an intersection with the green light in his favor must exercise the care of reasonable lookout for cross traffic which may violate the red light on the intersecting street.

In connection with the questions submitted on lookout appellant's counsel requested the court to ask, "(a) Did Ernest J. Michaelis enter the intersection against the red light?" "If you answer subdivision (a) 'No,' then answer this question: 'At and immediately before the accident in question, was

Ernest J. Michaelis negligent in proceeding across the intersection with the green light?"

The court refused to so frame the verdict. Under different facts, if the view between the two vehicles were open so that each was clearly visible to the other, and one clearly reached the corner first, such division of the question might be proper. In the instant case, however, the appellant claimed that he was traversing the intersection on the green light and that the respondent Michaelis ran the red light.

Counsel for appellant also contends that instructions should have been given with respect to the duty of the driver in the intersection upon the green light to look out for and avoid collision with one driving in violation of the law, if he could reasonably do so.

The issues being crystallized as they were, we are of the opinion that the trial court correctly refused to frame the verdict as requested and that the instructions given were adequate to apprise the jury of the principle of law which governed.

The evidence is ample to support the jury's finding that Friede was negligent with respect to running the red light, as counsel concedes, and also that he was negligent with respect to speed and lookout. The sedan was thrown at almost right angles from the point of impact to the tavern where it came to rest, a fact from which the jury could infer that the truck was traveling at excessive speed.

It was undisputed that Michaelis was driving twenty to twenty-five miles per hour. Friede claimed that he had stopped for a "walk" signal and was just starting in motion. The jury might well believe his testimony on speed to be contrary to the physical facts. His testimony with respect to the walk light was proven erroneous later by evidence that the walk lights are not in operation between 10 p.m. and 7 a.m.

The speed of the respondent was within the limits established by the governing body of Madison, and could well have been found by the jury to be reasonable in view of the general

traffic conditions and the fact that he was traversing the intersection on the green light. The question of respondent's lookout was also one for the jury. It was entitled to consider the lack of opportunity because of the blind intersection.

One of the instructions requested by appellant was: "You are instructed that the right of a driver to proceed on a green light is not absolute. The driver who has a signal in his favor is entitled to rely upon the favorable signal light, until it should have become apparent to him, in time to enable him to avoid the collision by the exercise of ordinary care, that another vehicle coming from a cross direction was going to proceed in disregard of the lights."

There being no evidence in the record that Michaelis should have observed the truck at a time when it would have afforded him an opportunity to avoid the collision by taking some other course of action, the trial court was justified in refusing to instruct the jury as requested by the appellant.

Appellant relies upon *Teas v. Eisenlord* (1934), 215 Wis. 455, 253 N. W. 795; *Zindell v. Central Mut. Ins. Co.* (1936), 222 Wis. 575, 269 N. W. 327; and *Wilson v. Koch* (1942), 241 Wis. 594, 6 N. W. (2d) 659, in each of which cases the question of lookout was held to be for the jury. We are of the opinion that the trial court correctly held that the question of Michaelis' lookout was for the jury in this case.

The only remaining question is as to the damages of Erie Lee Battice, a colored woman fifty-one years of age at the time of the accident. The court allowed for medical and hospital expenses $1,331.98, which amount was not in dispute. The jury awarded $2,200 for loss of wages, and $15,000 for personal injuries.

The only item challenged is that of $15,000. The respondent Battice was seriously and painfully injured. She sustained a severe scalp wound with hemorrhaging and a fracture of the skull; an injured right shoulder and forearm with torn

ligaments, which area was swollen and hemorrhaged; multiple fractures of both bones of the left leg below the knee and into the ankle joint, resulting in a half inch shortening of the leg. There was a deficiency of circulation due to a thrombophlebitis during healing and deficiency in calcium. Her ability to work and move about is impaired, and her head injuries continue to cause headaches.

Mrs. Battice had a life expectancy of approximately nineteen years. Her loss of earnings from the time of the accident to the time of the trial (less than two years) was $2,200. The item for personal injuries being lumped to include all pain and suffering, permanent disability, and loss of future earnings, the amount of $15,000 is not deemed to be excessive.

*By the Court.*—Judgments affirmed.