L. G. BALFOUR COMPANY *vs*. ABLONDI & BOYNTON CORPORATION.

Bristol.    November 14, 1975. — December 22, 1975.

Present: HALE, C.J., ROSE, & KEVILLE, JJ.

*Watercourse.   Negligence,* Watercourse, Flooding.

A verdict for the plaintiff in an action of tort was supported by evidence warranting findings that the defendant, in constructing a bridge across a river, was negligent in that it left fill in the riverbed which, as it should have anticipated, raised the level of the water as it flowed in a narrow sluiceway between concrete walls, past a factory of the plaintiff located nearby upstream, whereby, during subsequent heavy rains, the water rose to such an extent that it broke windows in the plaintiff's factory, cascaded into the factory, and caused substantial damage. [660-661]

TORT. Writ in the Superior Court dated April 14, 1969. The action was tried before *McGuire, J.*

*Charles R. Desmarais* for the defendant.

*Edmund F. Henry* (*John W. McIntyre* with him) for the plaintiff.

HALE, C.J.    The plaintiff, a manufacturer of jewelry with a plant located in Attleboro on both sides of the Ten Mile River immediately north of County Street, brought an action in tort to recover damages suffered from the flooding of its factory. The plaintiff alleged that the flooding resulted in part from an increase in the level of the river running next to its factory caused by fill and other debris neg-

ligently left in the riverbed by the defendant after it had completed construction of a road bridge at County Street. The case was tried to a jury whose verdict for the plaintiff was entered under leave reserved. The defendant has appealed from the denial of its motion for a directed verdict and motion for the entry of judgment under leave reserved. We have reviewed the record, including the transcript and photographs, and are of the opinion that there was sufficient evidence upon which the jury could have found the defendant liable and that the judge therefore properly denied both motions. We summarize the evidence in its light most favorable to the plaintiff.

As the Ten Mile River flows toward the industrial section of Attleboro from the north, its banks change from natural sloping earth to riprap and then to cement walls. As it passes the plaintiff's plant, the vertical cement walls narrow to a twenty-five foot sluiceway. Beginning in the summer of 1967, pursuant to a contract with the Commonwealth, the defendant removed the old bridge on which County Street crosses the Ten Mile River and replaced it with a new one. To create a dry work area at the work site, the defendant built a cofferdam extending to at least twenty feet north of County Street and placed three twenty-foot lengths of corrugated pipe joined end to end in position to carry the flow of water downstream.

During construction on October 6 or 7, 1967, a brief period of heavy rainfall resulted in a flash flood on the Ten Mile River. The flow exceeded the capacity of the corrugated pipe and ran over the cofferdam. After that event the plaintiff's president, Yeager, expressed to the defendant's superintendent his concern about the fill and accumulating debris in the river. According to Yeager, the superintendent responded that all such material would be removed from the river at the end of construction.

Construction of the new bridge was completed in December, 1967, and the bridge was opened to vehicular traffic before Christmas. The defendant completed clean up work at the site in January, 1968. Yeager and other Balfour employees testified that they had observed the level of the

riverbed before and after construction of the bridge. One employee testified that for a distance of at least forty feet north of the bridge the riverbed appeared to be twelve inches higher after construction was completed than its level before the construction work began. Yeager testified that after the construction had been completed the river was eighteen to twenty-four inches higher than its previous normal level.

Heavy rains on March 17 and 18, 1968, raised the level of the river fourteen to sixteen inches above the base of the windows of the plaintiff's plant. During previous flooding incidents, automatic pumping equipment installed in the plant had enabled the plaintiff to avoid substantial flood damage. The plaintiff introduced testimony that in the most severe previous flood, Hurricane Diane of 1955, the water level had only reached to the windowsills, and that no substantial flood damage had occurred. Precipitation records indicated that the total rainfall during Hurricane Diane exceeded that of the March, 1968, flood. When the water rose above the window level on March 18, 1968, it broke the panes, cascaded into the building, exceeded the pumps' capacity, and caused substantial damage.

The defendant offered contradictory testimony, including that of its superintendent, that it had removed the fill from the riverbed and that the riverbed was at the same level as it had been before construction. A State engineer testified that after completion of the work the riverbed measured one foot lower under the bridge than the level shown in a 1965 survey, and from the same level to five inches higher than the corresponding levels in the 1965 survey north of the bridge.

The jury were required to weigh the conflicting evidence and determine the facts. They could reasonably have concluded that the defendant had notice that fill left in this narrowly channeled river would raise its level and create a substantial danger of flood damage to the adjacent buildings. It was open to the jury to find that the defendant had left fill in the riverbed, that the level of the water was raised by that fill, and that the increased level of the riverbed had

caused or contributed to a further increase in the river's level and thus to the flooding of the plaintiff's building. *Hecht* v. *Boston Wharf Co.* 220 Mass. 397, 406 (1915). See *Scatena* v. *Pittsburgh & New England Trucking,* 2 Mass. App. Ct. 683, 684 (1974). We are also of the opinion that the jury were warranted in finding that the defendant was negligent.

The jury were also entitled to disregard the defendant's contention that it should not be held liable for the damages suffered by the plaintiff because the flood was a vis major, or act of God. The "act of God" concept has been defined as "an irresistible physical force not attributable in any degree to the conduct of man and not in reason preventable by human foresight, strength or care." *Hecht* v. *Boston Wharf Co.* 220 Mass. at 402. A party may escape liability for damage resulting from such a force only when the force is of such magnitude that the damage cannot be reasonably anticipated, or when reasonable preventive measures are insufficient to avoid the damage. *Hoosac Tunnel and Wilmington R.R.* v. *New England Power Co.* 311 Mass. 667, 672 (1942). In light of the testimony of the flooding conditions during Hurricane Diane, there was sufficient evidence from which the jury could find that the defendant should have anticipated flooding of that magnitude and taken steps to insure that the level of the riverbed was no higher than it was prior to the bridge reconstruction, so as not to worsen the consequences of such flooding. They could also have determined that reasonable caution required some margin of safety beyond past experience. *Hecht, supra,* at 405.

*Judgment is to be entered on*
*the verdict returned*
*by the jury.*