OneBeacon Insurance Group[1] & others[2] *vs.* RSC
Corporation & another.[3]

No. 06-P-953.

Middlesex. December 14, 2006. - June 25, 2007.

Present: Lenk, Armstrong, & Cypher, JJ.

*Negligence,* Construction work. *Damages,* Repairs, Replacement or reconstruction of building. *Evidence,* Hearsay, Impeachment of credibility, Questioning of witness by judge.

In an action seeking recovery for water and structural damage resulting from a contractor's alleged negligence during reconstruction work on a residence, the judge did not err in precluding the contractor from introducing certain meteorological evidence to support an "act of God" defense, where the jury heard evidence of the severity of the storm in question and were capable of reaching a commonsense conclusion on the adequacy of the contractor's tarpaulin system to withstand such weather [410-411]; further, the judge did not err in permitting the plaintiffs to recover for building code upgrades needed for repairs, where such upgrades were reasonably necessary for the repair work necessitated by the contractor's failure to take adequate precautions against water damage [411-413].

The defendants in a civil action failed to demonstrate any error arising from the admission at trial of certain documentary evidence that provided part of the basis for an expert's opinion, and further failed to demonstrate that certain actions by the judge suggested improper partisanship. [413]

Civil action commenced in the Superior Court Department on December 15, 2003.

The case was tried before *Bonnie H. MacLeod-Mancuso,* J.

*Douglas F. Hartman* for the defendants.

*James P. Cullen, Jr.,* of Pennsylvania (*Patrick J. Loftus, III,* with him) for the plaintiffs.

Armstrong, J. On a rainy, blustery weekend in December,

[1]Formerly known as Commercial Union Insurance Company, as subrogee of George and Sharyn Neble.

[2]George Neble and Sharyn Neble.

[3]Stephen M. Ryan.

1998, George and Sharyn Neble suffered major water and some structural damage to their house in Winchester. In this action based on contract and tort theories of recovery, they alleged that the damage was due to the negligence of a contractor, the defendant Stephen Ryan, who was doing reconstruction work on the house. Ryan and his corporation (RSC Corp.) appeal from a judgment for substantial damages based on the verdict of the jury.

The cause of the damage, briefly described, was in the tarpaulin protection Ryan arranged on Friday at the end of the workday to shelter from the weather a portion of the upper floors where he had removed a sunroom and was replacing it with a bath and dressing area to serve the master bedroom. On Sunday evening — one marked by heavy rains and strong winds — the Nebles arrived home to find water dripping from exposed ceiling beams in downstairs rooms under the construction area and running down walls. (The water was rust colored and was staining draperies, furniture, and carpeting.) They went to the basement to see if water was infiltrating and were there when they heard (and felt) a large crash and found water pouring down the cellar stairs. It was later surmised, and not contradicted, that large amounts of water had pooled in the tarpaulins which finally gave way, causing a large volume of water to crash through the construction area and through the first floor ceiling. At some point that evening the cellar ceiling also collapsed. Ryan was faulted for not having constructed a temporary plywood substrate to prevent the tarpaulins from sagging and acting as a reservoir.

The defendants — Ryan and his corporation — raise five points on appeal. The first is that the judge, acting on the plaintiffs' motion in limine, improperly barred the defendants from pursuing an "act of God" defense. In particular, the defendants sought to put in evidence the report of a meteorological expert which purported to demonstrate that the stormy weather, particularly on Sunday from 2 P.M. to 8 P.M., which totaled two inches of rain with sustained winds of thirty-to-forty miles per hour and gusts to fifty-five, was historically so unusual in its ferocity that it could be found to be an act of God, defined in the authorities as "the action of an irresistible physical force, or the violence of natural phenomenon, . . . not referable to

participation by man through unreasonable failure to anticipate danger or to put forth protective instrumentalities, and overpowering all preventative measures exacted by the wisdom and foresight of prudent men in the light of the warnings of experience and the observations of general climatic conditions . . . and all other available sources of information." *Bratton* v. *Rudnick*, 283 Mass. 556, 561 (1933). A good example of the concept — a force of nature so powerful as to overwhelm all normal precautions — is found in the decision of Justice Qua in *Hoosac Tunnel and Wilmington R.R. Co.* v. *New England Power Co.*, 311 Mass. 667, 671-673 (1942), concerning the effects of the 1938 hurricane; one might also imagine the recent Asian tsunami, or possibly the far more common direct strike of a tornado. The concept the defendants seem to have been reaching for is a storm so powerful as to make preparation useless, or so little that the defendants' failure to design adequate precautions is excusable. Contrast *L.G. Balfour Co.* v. *Ablondi & Boynton Corp.*, 3 Mass. App. Ct. 658, 661 (1975), and cases cited.

It is hard to see what was lost by the judge's ruling precluding evidence underlying that line of argument. The jury heard the hard facts of the severity of the storm (the two inches of rain, the wind speed) from two sources: the plaintiffs' meteorologist (the storm was correctly forecast from Thursday on, it was clear by Saturday the rainfall would be heavy and the winds high) and the defendants' meteorologist (the storm was underforecast, rainfall was heavier and winds higher than expected), and it is not too much to suggest that the jury were capable of reaching a commonsense conclusion on the adequacy of Ryan's tarpaulins to withstand a rainy, windy night in New England in December without expert testimony on the statistical likelihood of such storms. Both agreed that the weekend of rain was predicted, and the jury could properly reach the conclusion that the problem was not the amount of rain that fell but rather the fact that Ryan's tarpaulin system collected water instead of shedding it. There was no error.

The defendants' second contention was that the judge erred in permitting the plaintiffs to recover for code upgrades needed in the repairs. The house was heavily built near the turn of the

last century by the man who constructed the former Boston Garden. It had fourteen inch thick masonry walls with metal lathe and heavy plaster wetwall construction — all of which absorbed and retained the water that flooded the floors and ran down through the ceiling and walls. It was necessary to replace walls, wiring, the heating systems, and even some plumbing, floor joists, and flooring; but to do the repair work, building permits were required, which could not be issued except for work that complied with present-day codes. The defendants rely on the principle that "care must be taken . . . not to permit the injured party to recover more than is fair to restore him to his position prior to his loss. He should not recover a windfall." *Massachusetts Port Authy.* v. *Sciaba Constr. Corp.*, 54 Mass. App. Ct. 509, 517 (2002). Here the defendants argue that the plaintiffs will recover a windfall if they can recover for code upgrades, because they will have a code-compliant house rather than one that is noncompliant. The fallacy in this reasoning is the assumption that the former must be worth more than the latter. Such is not the case unless the noncompliant house is burdened with an obligation to bring it up to code. There was no such obligation prior to the massive water infiltration. The house was grandfathered in its pre-code condition. Code compliance was not to make the house more livable or comfortable; it had nothing to do with the house being obsolete, nonfunctional, or worn out. It is simply part of the cost of doing the repair work necessitated by the defendants' failure to take adequate precautions against water damage.[4] The recovery of the cost of the code upgrades did not violate the central principle, that "the

---

[4]In effect, this is precisely the reasoning employed by Judge Lasker in the unreported decision, *Federal Ins. Co.* vs. *Cogswell Sprinkler Co.*, U.S. Dist. Ct., No. 03-CV-10920-MEL, slip op. at 5 (D. Mass. Sept. 30, 2004):

> "(1) [T]his is the only remedy that allows property owners to be placed in the position they occupied before the tortious event, by restoring the building to a condition in which it can be reoccupied and utilized as before; (2) the upgrade expenses would not have been incurred but for the triggering tortious event of the water damage; and (3) any other outcome would essentially penalize the property owners for the tortfeasor's negligence by forcing property owners to expend potentially significant sums of their own money on upgrades necessary for code compliance."

To the same effect, see *Zindell* v. *Central Mut. Ins. Co. of Chicago*, 222 Wis.

replacement or reconstruction itself must be reasonably necessary in light of the damage inflicted by a particular defendant." *Trinity Church in the City of Boston* v. *John Hancock Mutual Life Ins. Co.*, 399 Mass. 43, 50 (1987).

The remaining three points raised by the defendants require little discussion. One concerned the admission in evidence of a loss estimate prepared by a public loss adjustor, whose estimate was used as the checklist by OneBeacon's loss adjustor in computing her own loss estimates, which in turn were the basis on which OneBeacon compensated the Nebles. The public adjustor did not testify; his report was authenticated by OneBeacon's adjustor, whose handwritten amendments were noted thereon — some items up, some down. It was properly admitted as constituting part of the basis for her opinion. There was no violation of the hearsay rule. See *Beal Bank, SSB* v. *Eurich*, 444 Mass. 813, 818 (2005) (records of one business are admissible as business records of another business where the records are integrated into the latter's records and relied on); *McLaughlin* v. *CGU Ins. Co.*, 445 Mass. 815, 819 (2006). The judge offered to give a limiting instruction if the defendants prepared it, but they did not do so. Nor did the judge show partiality by deflecting a line of questioning that sought to impeach Sharyn Neble for not having with her on the witness stand detailed financial records she had not been directed to bring by subpoena or otherwise.[5] Finally, no objection was made to a single question the judge asked during the cross-examination of OneBeacon's adjustor, and the defendants may not now question its propriety. In any event, there was nothing in the judge's infrequent questions or comments that suggested partisanship. See generally *Commonwealth* v. *Hassey*, 40 Mass. App. Ct. 806, 810-811 (1996), for a discussion of judicial questioning and its limits.

There being no error in the conduct of the trial, the judgment must be affirmed.

*So ordered.*

---

575, 582-583 (1936); *Jesel* v. *Benas*, 160 S.W. 528, 529 (Mo. App. Ct. 1913); *Peluso* v. *Singer Gen. Precision, Inc.*, 47 Ill. App. 3d 842, 856 (1977).

[5]The records were apparently already in the possession of the defendants' counsel in response to discovery.